547 Pa. 563 (1997)
692 A.2d 1024
COMMONWEALTH of Pennsylvania, Appellee,
v.
Vinson WASHINGTON, Appellant.
Supreme Court of Pennsylvania.
Argued April 30, 1996.
Decided April 18, 1997.
*566 Lee Mandell, Philadelphia, for Vinson Washington.
*567 Catherine Marshall and Anthony V. Pomerantz, Philadelphia, Robert A. Graci, Office of Attorney General, Harrisburg, for Commonwealth.
Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

OPINION
NIGRO, Justice.
On November 4, 1994, following a jury trial, Appellant Vinson Washington was found guilty of first-degree murder for the killing of Anthony Richardson. The jury returned a verdict of death, and on January 5, 1995, the trial court formally imposed the death sentence. This direct appeal followed. For the reasons presented herein, we affirm the judgment of sentence.
Although Appellant does not challenge the sufficiency of the evidence, this Court is required in capital cases to review the record to determine whether the Commonwealth has established the elements necessary to sustain a conviction for first-degree murder. See Commonwealth v. Zettlemoyer, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In conducting such a review, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt. See Commonwealth v. Michael, 544 Pa. 105, 110, 674 A.2d 1044, 1047 (1996).
To obtain a conviction for first-degree murder, the Commonwealth must prove that a human being was unlawfully killed; that the defendant did the killing; and that the killing was done intentionally. See 18 Pa. Cons.Stat. § 2502(a), (d) (1983); Commonwealth v. Wilson, 543 Pa. 429, 437-39, 672 A.2d 293, 297 (1996). Further, the specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body. See Michael, 544 Pa. at ___, *568 674 A.2d at 1047; Commonwealth v. Bond, 539 Pa. 299, 305, 652 A.2d 308, 311 (1995).
The relevant facts are as follows. On November 22, 1993, at approximately 10:25 p.m., Anthony Richardson and Lenora Grimes were standing in front of Grimes' apartment on the 1800 block of Wilmot Street in Philadelphia. They were engaged in drug dealing. Appellant, who had been standing on a nearby corner with another man, walked up the street toward Grimes and Richardson. Grimes asked him if he needed anything, but Appellant ignored her. Richardson then asked Appellant if he wanted anything. Appellant walked past Richardson but then turned, pulled out a .357 Magnum handgun, and shot Richardson in the right side, just below the chest. Richardson fell to the ground and said "[y]ou can take it all." N.T., 12/2/95, at 59. Appellant then moved closer to Richardson and shot him twice in the back of the head.
Appellant later confessed to the killing and indicated that, as he walked past Richardson and Grimes, Richardson had called him "one of the stick-up boys" and had reached toward his waist with his left hand as if to draw a gun. Appellant, bothered by this perceived insult, replied with "I ain't no stickup boy," and then shot Richardson as described above. N.T., 12/5/94, at 21-22. He then fled the scene. Richardson died almost immediately.
Grimes identified Appellant as the shooter in a photo array, at the preliminary hearing, and at trial. Further, a .357 Magnum caliber bullet was recovered from Richardson's body.
At approximately 4:30 a.m. on December 31, 1993, Appellant was arrested on a charge unrelated to the instant case. At 2:30 p.m. on December 31, 1993, the police received information from a robbery suspect implicating Appellant in the Richardson killing. Consequently, at 8:45 a.m. on January 1, 1994, Appellant was transported to the offices of the Homicide Unit for questioning concerning the Richardson case. He was given his Miranda warnings and, by 1:55 p.m. that same day, he had confessed to the killing.
*569 This evidence is more than sufficient to demonstrate that Appellant shot Richardson and did so with the specific intent to kill. Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the jury could have found each element of an intentional killing beyond a reasonable doubt. See 18 Pa. Cons.Stat. § 2502(a), (d) (1983); Wilson, 543 Pa. at 437-39, 672 A.2d at 297.
On December 5, 1994, the jury found Appellant guilty of first-degree murder[1] and possessing an instrument of crime.[2] At the sentencing hearing, the Commonwealth sought to prove that Appellant had a significant history of felony convictions involving the use or threat of violence to the person.[3] Specifically, the Commonwealth offered evidence that on March 26, 1992 Appellant pled guilty to charges of aggravated assault, robbery, and criminal conspiracy, and that Appellant had been adjudicated delinquent of those offenses. Further, the Commonwealth established that on November 4, 1994, Appellant was found guilty of first-degree murder, robbery, criminal conspiracy, and possessing an instrument of crime in the killing of Zachary Jackson and that Appellant had been sentenced to death for that killing.[4]
Ultimately, the jury found one aggravating circumstance, that Appellant had a significant history of felony convictions involving the use or threat of violence to the person,[5] and no mitigating circumstances. The jury therefore returned a verdict of death, which the trial court formally imposed on January 5, 1995.[6] Appellant then directly appealed to this *570 Court,[7] raising three ineffective assistance of counsel claims and one argument for a change in existing law.
To prevail on each of his ineffective assistance of counsel claims, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness. See Commonwealth v. Howard, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994).
Appellant first argues that counsel was ineffective for not moving to suppress his confession because it was obtained in violation of the "six-hour" rule announced in Commonwealth v. Davenport, 471 Pa. 278, 370 A.2d 301 (1977). In Davenport, this Court held that an arrestee must be arraigned within six hours of arrest in order "to guard against the coercive influence of custodial interrogation [and] to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." Davenport, 471 Pa. at 284, 370 A.2d at 305. If arraignment did not occur within six hours of arrest, any statement by the accused obtained between arrest and arraignment was not admissible at trial. See Davenport, 471 Pa. at 286, 370 A.2d at 306.
Later, in Commonwealth v. Duncan, 514 Pa. 395, 525 A.2d 1177 (1987), the Court modified the rule, indicating that the crucial consideration was not the time of the arraignment. Rather, the "focus should be upon when the [defendant's] statement was obtained, i.e., within or beyond the six hour period." Thus, since Duncan, any statement obtained within six hours of arrest, absent coercion or other illegality, is not to be suppressed on the basis of Davenport.
In the instant case, Appellant argues that since he had been in custody for approximately 28 hours prior to the start of questioning on the Richardson killing that his confession to that crime was obtained through "the intrinsically coercive effects of unbroken custody and multiple police interrogatories." *571 Appellant's Br. at 11. To accept this argument would be to ignore the clear import of the facts of this case. Appellant was arrested at 4:30 a.m. on December 31, 1993 on an unrelated charge. While being processed on that charge, he was placed in a holding cell. Then, at 8:45 a.m. on January 1, 1994, he was taken to an interrogation room in the Police Administration Building[8], where he gave an inculpatory statement within approximately five hours from the start of questioning.[9] On these facts, we decline to find a violation of the Davenport-Duncan rule, which is premised on a desire to avoid the coercive effect of prolonged police interrogation. See Bond, 539 Pa. at 308, 652 A.2d at 312; Davenport, 471 Pa. at 284, 370 A.2d at 305.
And, in any event, Appellant has failed to establish the prejudice necessary to support his ineffectiveness claim. Lenora Grimes witnessed the entire course of events surrounding the Richardson shooting and gave a description of Appellant and the murder weapon. She later identified Appellant in a photo array, at his preliminary hearing, and at trial. Further, her account of the criminal episode was corroborated by the ballistics evidence in the case. Given these factors, it is clear that Appellant has failed to demonstrate that the outcome of the case would have been different but for counsel's inaction. See Howard, 538 Pa. at 100, 645 A.2d at 1308 (to establish prejudice, "a defendant is required to show that counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness"). Accordingly, his ineffectiveness claim fails.
Next, Appellant suggests that counsel was ineffective for failing to request jury charges on self-defense and voluntary manslaughter. It is clear that jury instructions regarding *572 particular crimes or defenses are not warranted where the facts of the case do not support those instructions. See Commonwealth v. Browdie, 543 Pa. 337, 347-50, 671 A.2d 668, 673-74 (1996); see also Commonwealth v. Harris, 542 Pa. 134, 139-40, 665 A.2d 1172, 1175 (1995) (no self-defense instruction required where the evidence did not support self-defense); Commonwealth v. Carter, 502 Pa. 433, 443-44, 466 A.2d 1328, 1332-33 (1983) (trial counsel not ineffective for failing to request instruction on voluntary manslaughter where no evidence existed to support a conviction for that offense).
Deadly force may not be used in self-defense unless: (1) the actor reasonably believed himself to be in imminent danger of death or serious bodily harm and that it was necessary to use deadly force against the victim in order to prevent such harm, (2) the actor was without fault in provoking or continuing the situation that resulted in the killing, and (3) the actor did not violate any duty to retreat. See 18 Pa. Cons.Stat. § 505 (1983); Commonwealth v. Butler, 516 Pa. 522, 524-5, 533 A.2d 992, 993 (1987).
The facts in this case do not support a finding that Appellant acted in self-defense when he killed Richardson. In his confession, Appellant stated:
I walked past [Richardson] and he said something to me. [He] said I was one of the stick-up boys and he put his hand on his waist like he was reaching into his pants for a gun. He reached toward his pants with his left hand. I said I ain't no stick-up boy. [He] said go the f*ck ahead. I was by the church wall and then he was like walking a little bit, and I was thinking[,] why [is] this nigger talking to me like this, and it was like about from one corner of this room to the other like about a couple of steps and I pulled my gun and shot him. I think I hit him in the back. Excuse me. I think I hit him in his back. I ain't sure. Cause he fell and said you can have it. So then I was walking past him and I shot two more times and then I left the scene.
N.T., 12/5/94, at 21-22.
Nowhere in this passage does Appellant indicate that he believed he was in danger of imminent death or serious bodily *573 injury. Moreover, despite Appellant's claim that Richardson reached toward his waist, Appellant never stated that he feared Richardson actually had a gun  and there is no evidence that he did. Appellant's lack of fear is also shown by the fact that he did not immediately draw his own weapon when Richardson made the allegedly threatening gesture toward his waist. Rather, he responded verbally with "I ain't no stick-up boy." Richardson then spoke again. It was only at that point, after reflecting on Richardson's comments and attitude, that Appellant drew his weapon and fired. Also, after the first shot brought Richardson to the ground, Appellant could not reasonably have possessed a belief that his life was still in danger and that it was necessary to shoot Richardson twice in the head to defend himself.
Thus, the evidence in Appellant's case does not support a finding that he acted in self-defense. See 18 Pa. Cons.Stat. § 505 (1983); Butler, 516 Pa. at 524-5, 533 A.2d at 993. An instruction on that issue was therefore not warranted. See Harris, 542 Pa. at 139-40, 665 A.2d at 1175. Appellant's underlying claim is thus without merit and his ineffective assistance claim fails. See Howard, 538 Pa. at 93, 645 A.2d at 1304.
In a related claim, Appellant contends that counsel was ineffective for not requesting a jury charge on "unreasonable belief" voluntary manslaughter. Under 18 Pa. Cons.Stat. § 2503(b) (1983), an intentional killing is voluntary manslaughter if committed as a result of an unreasonable belief in the need for deadly force in self-defense. See Commonwealth v. Mehmeti, 501 Pa. 589, 597, 462 A.2d 657, 661 (1983); Commonwealth v. McNeil, 497 Pa. 187, 198, 439 A.2d 664, 669 (1981).
The facts of this case, as set forth in Appellant's confession and corroborated by Grimes' testimony, do not support a finding of unreasonable belief voluntary manslaughter. Despite Richardson's allegedly threatening gesture, Appellant was never confronted with a gun. Moreover, his own statement indicates that he had time to pause, reflect on *574 Richardson's comments, and conclude that he was offended by them. He then attacked Richardson and, after felling him with one shot, approached him and shot twice more, all without Richardson drawing a weapon. We believe these facts are inconsistent with the conclusion that Appellant possessed a real, but mistaken, belief that his life was in imminent danger. They suggest, rather, that Appellant was offended by a perceived insult and decided to respond with deadly force.
A jury instruction on unreasonable belief voluntary manslaughter was therefore not warranted given the evidence presented. See Browdie, 543 Pa. at 347-49, 671 A.2d at 673; Carter, 502 Pa. at 443-44, 466 A.2d at 1332-33. Appellant's underlying claim is thus without merit and his ineffective assistance claim fails. See Howard, 538 Pa. at 93, 645 A.2d at 1304.
Next, Appellant contends that counsel was ineffective for not requesting the redaction of a reference to prior criminal activity contained in his confession. Appellant is referring to Richardson's remark that Appellant was one of the "stick-up boys." Appellant suggests that this remark implied that he had, at an earlier date, engaged in armed robbery. He suggests that the jury may have taken this as evidence of a general criminal disposition and that counsel was ineffective for allowing it to be admitted.
Generally, evidence of criminal activity unrelated to the offense in question is inadmissible against a defendant. See Commonwealth v. LaCava, 542 Pa. 160, 176, 666 A.2d 221, 228-29 (1995); Commonwealth v. Billa, 521 Pa. 168, 177, 555 A.2d 835, 840 (1989). However, such evidence is admissible when offered to prove motive or malice. See LaCava, 542 Pa. at 176, 666 A.2d at 229; Commonwealth v. Williams, 541 Pa. 85, 94, 660 A.2d 1316, 1321 (1995).
Appellant's confession clearly indicates that he was offended by Richardson's comment and chose to respond with gunfire. Richardson's remark was therefore properly admitted as evidence of Appellant's motive for the shooting. Appellant's ineffective assistance claim must therefore fail given *575 that his underlying claim is without merit.[10]See Howard, 538 Pa. at 93, 645 A.2d at 1304.
Lastly, Appellant contends that he is entitled to a new sentencing hearing because it was improper for the jury to be informed that he had received the death sentence for the killing of Zachary Jackson.[11]
In sentencing for first-degree murder, a jury may consider only those aggravating circumstances listed in 42 Pa. Cons.Stat. § 9711(d). Section 9711(d)(9) sets forth one such circumstance, that "the defendant has a significant history of felony convictions involving the use or threat of violence to the person." Appellant argues that the use of the word "convictions," and nothing more, indicates that the Legislature intended for sentencing juries to be informed only of the mere fact of the prior conviction itself, not of the circumstances surrounding that conviction. He suggests that the decisions of this Court interpreting section 9711(d)(9) as allowing the introduction of such evidence were wrongly decided and should be overruled. See, e.g., Commonwealth v. Murphy, 540 Pa. 318, 657 A.2d 927 (1995); Commonwealth v. Beasley, 505 Pa. 279, 479 A.2d 460 (1984).
In Beasley, this Court stated:
[c]onvictions are defined by the essential and necessary facts upon which they are based, and judgments of sentence flow naturally from, and form an integral part of, those convictions. Thus, reason impels that the construction of the term `convictions' in [section] 9711(d)(9) be such as to *576 permit consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed. In the present case, therefore, no error was committed when the jury was informed . . . of appellant's prior murder conviction[] . . ., and that the jury in that case had returned a verdict of death.
Beasley, 505 Pa. at 289, 479 A.2d at 465.
Since Beasley, this Court has not departed from this rationale. See, e.g., Commonwealth v. Murphy, 540 Pa. 318, 657 A.2d 927 (1995); Commonwealth v. Young, 536 Pa. 57, 637 A.2d 1313 (1993); Commonwealth v. Reid, 533 Pa. 508, 626 A.2d 118 (1993); Commonwealth v. Haag, 522 Pa. 388, 562 A.2d 289 (1989). We see no reason to do so today, and Appellant offers no compelling arguments in support of his position. Accordingly, we reject Appellant's claim as inconsistent with our prior decisions.
Having concluded that Appellant's claims for relief are without merit, we must affirm the judgment of sentence unless we determine that
(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;
(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or
(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.
42 Pa. Cons.Stat. § 9711(h)(3) (Supp.1995).
Upon review of the record, we conclude that the sentence was not the product of passion, prejudice or any other arbitrary factor. Rather, it was based upon evidence properly admitted at trial. We also conclude that the evidence was sufficient to support the finding of one aggravating circumstance, that Appellant has a significant history of felony convictions involving the use or threat of violence to the person. See id. § 9711(d)(9).
*577 Lastly, we have reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the Administrative Office of the Pennsylvania Courts. See Commonwealth v. Frey, 504 Pa. 428, 475 A.2d 700, cert. denied, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). We conclude that the sentence of death imposed upon Appellant is not excessive or disproportionate.
Accordingly, we affirm the judgment of sentence.[12]
NIX, Former C.J., did not participate in the consideration or decision of this case.
NOTES
[1] See 18 Pa.Cons.Stat. § 2502(a) (1983).
[2] See id. § 907(a).
[3] See 42 Pa.Cons.Stat. § 9711(d)(9) (Supp.1995).
[4] This Court affirmed Appellant's judgment of sentence in the Jackson killing. See Commonwealth v. Washington, 547 Pa. 550, 692 A.2d 1018 (1997), at No. 90 Capital Appeal Docket 1995.
[5] See 42 Pa.Cons.Stat. § 9711(d)(9) (Supp.1995).
[6] On the charge of possessing an instrument of crime, the trial court sentenced Appellant to one to two years imprisonment. That sentence was made consecutive to any other sentences Appellant was serving. See N.T., 1/5/95, at 8.
[7] Pursuant to 42 Pa.Cons.Stat. § 9711(h)(1) (Supp.1995) and Pa.R.A.P. 1941.
[8] After a thorough review of the record and the briefs in this case, we cannot conclude that Appellant did anything other than languish, unmolested, in his cell until he was removed for questioning on January 1, 1994.
[9] Thus, even if one were to conclude that the interrogation of Appellant on the Jackson shooting constituted an arrest on that charge, there was no violation of the Davenport-Duncan rule.
[10] We also note that, even if this claim had merit, Appellant would not be able to establish the prejudice necessary to succeed on an ineffectiveness claim given the other, properly admitted evidence clearly establishing his guilt, i.e., his confession (even if redacted), the eyewitness testimony of Grimes, and the ballistics evidence matching a bullet retrieved from Richardson's body to the type of handgun Appellant admitted to using in the killing.
[11] Appellant failed to raise this claim at the trial court level, and it is therefore waived. See Pa.R.A.P. 302(a); Commonwealth v. Robinson, 543 Pa. 190, 198-200, 670 A.2d 616, 620 (1995). However, we will address the merits of the claim in accordance with the relaxed waiver rule applicable in capital cases. See LaCava, 542 Pa. at 175 n. 8, 666 A.2d at 228 n. 8.
[12] The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. See 42 Pa.Cons.Stat. § 9711(i) (1982).