J-S05026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KENNETH MALIK EVANS, III, | |
| Appellant | No. 486 MDA 2015 |

Appeal from the Judgment of Sentence October 24, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004366-2013

BEFORE: BENDER, P.J.E., SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED MARCH 14, 2016**

Kenneth Malik Evans, III ("Appellant") appeals from the judgment of sentence entered following his conviction of first-degree murder. We affirm.

This case stems from a shooting that occurred in the Sherman Hills Apartment Complex in the City of Wilkes-Barre on November 11, 2013. As a result of the shooting, Shantique Goodson ("the victim") died.

The trial court summarized the procedural history of this case as follows:

> On January 24, 2014, the Luzerne County District Attorney filed a one (1) count Information charging [Appellant] with Criminal Homicide, 18 Pa.C.S.A. §2501. Subsequent to a jury trial commencing on August 19, 2014, [Appellant] was found guilty of Murder of the First Degree. A Pre-Sentence Investigation was ordered to be completed by the Luzerne

---

[*] Retired Senior Judge assigned to the Superior Court.

County Adult Probation and Parole Department, and a sentencing hearing was scheduled.

The sentencing hearing commenced on October 24, 2014, when [Appellant] was sentenced to a lifetime term of incarceration in a state correctional institution without the possibility of parole. [Appellant] was subsequently advised by [the trial court] of his post-sentence rights before the hearing concluded.

On November 3, 2014, [Appellant] filed a motion for Post-Verdict Relief, which was denied by Order of December 4, 2014.

On December 19, 2014, [Appellant] filed a Notice of Appeal. [The trial court] ordered, on December 23, 2014, [Appellant] to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and requested the Commonwealth to respond thereto. [Appellant's] trial counsel were permitted to withdraw, and appellate counsel was appointed to represent [Appellant] on December 23, 2014. [Appellant's] Rule 1925(b) Statement was timely filed on January 8, 2015, and the Commonwealth's response was filed on March 9, 2015.

Trial Court Opinion, 6/2/15, at 2-3 (internal footnote omitted). The trial court issued a Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues for our review:

I.    Whether the evidence was insufficient as a matter of law to establish Appellant's conviction for the charge of Murder [1].

II.   Whether the trial court committed an error of law or abused its discretion by denying Appellant's points for charge which included a jury instruction for Voluntary Manslaughter.

Appellant's Brief at 1.[1]

---

[1] We have renumbered Appellant's issues for purposes of our discussion.

In his first issue, Appellant argues that the evidence was insufficient to support a conviction for first degree murder. Appellant's Brief at 8. Appellant contends that the Commonwealth failed to prove that he possessed the required "specific intent" to kill the victim. *Id.* Specifically, Appellant asserts that the record lacks any evidence showing that the shooting was premeditated or planned in any way, as the incident resulted from a chance encounter. *Id.* Appellant further maintains that the shooting stemmed from an angry confrontation between the victim and Appellant, thereby satisfying the "heat of the passion" criterion under a voluntary manslaughter offense. *Id.* at 9. Appellant also argues that Appellant did not intend to kill the victim, as reflected by the fact that Appellant did not aim at the victim's head or chest, but instead fired shots "down towards her lower extremities." *Id.* at 10. It is Appellant's position "that his actions amount to no more than Third Degree Murder or Voluntary Manslaughter." *Id.* at 9.

The standard for evaluating sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011).

As set forth in the third element, first-degree murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a) and (d). "Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893, 910 (2002). The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. *Commonwealth v. Rivera*, 603 Pa. 340, 983 A.2d 1211, 1220 (2009); *Drumheller, supra*; *Commonwealth v. Earnest*, 342 Pa. 544, 21 A.2d 38, 40 (1941) ("Whether the intention to kill and the killing, that is, the premeditation and the fatal act, were within a brief space of time or a long space of time is immaterial if the killing was in fact intentional, willful, deliberate and premeditated."). Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Houser, supra* at 1133–34; [*Commonwealth v.*] *Briggs,* [12 A.3d 291, 306–307 (Pa. 2011)]; *Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 130–31 (2008). Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury. *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911, 916 (1963).

*Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013).

Here, it is undisputed that the victim was unlawfully killed[2] and that Appellant was responsible for the killing. As noted, Appellant argues solely that the Commonwealth has failed to prove that he possessed the required specific intent to kill the victim necessary to establish first-degree murder, and that his actions amount to no more than third-degree murder or voluntary manslaughter. Appellant's Brief at 8-9. Despite his assertions, the record supports the conclusion that Appellant acted with malice and the specific intent to kill.

The evidence reflects that on the date in question, Tiara McDuffie ("McDuffie"), driving a white Jeep Cherokee with the victim as her passenger, drove into the Sherman Hills Apartment Complex. N.T., 8/19/14, at 86. McDuffie did not park the car upon entering the complex because she saw Appellant in the complex. *Id.* at 86-87. After seeing Appellant, the victim also told McDuffie not to park the vehicle. *Id.* at 87. As a result, McDuffie cut across the parking lot and spun the car around to leave the area of the complex where Appellant was approaching. *Id.* at 87. The two women headed to the apartment of their friend Jasmine Frazier ("Frazier") that was located within the complex. *Id.* at 97.

---

[2] Dr. Gary W. Ross, the forensic pathologist who conducted the autopsy of the victim, concluded that the cause of the victim's death was multiple gunshot wounds and the manner of her death was homicide. N.T., 8/20/14, at 238-239.

After McDuffie stopped the Jeep near Frazier's apartment, Frazier approached the vehicle on the passenger side where the victim was sitting. N.T., 8/19/14, at 88, 121. The victim rolled the window down, and the parties engaged in a conversation. *Id.* at 96, 117-122. Moments later, Appellant aggressively approached the passenger side of the vehicle and addressed the victim. *Id.* at 122-123. Appellant told the victim to get the "'F' out of the car." *Id.* at 123. After the victim refused, Appellant reached for the handle of the passenger side door. *Id.* at 89, 123. The victim commented to Appellant: "didn't we discuss this yesterday?" *Id.* at 89, 123. Undeterred, Appellant pushed his left hand into the vehicle in an attempt to reach for the lock. *Id.* at 89, 124. The victim pushed Appellant's left hand away from the lock, and Appellant then put his right hand into the passenger side of the vehicle. *Id.* at 89, 124. With his right hand in the passenger side of the vehicle, Appellant shot the victim twice. *Id.* at 89, 124.

Frazier testified that while she was still leaning into the passenger side window, she saw Appellant shoot the victim in the lower abdomen. N.T., 8/19/14, at 124. After the two gunshots were fired, McDuffie sped away. *Id.* at 89-90, 126. Appellant continued to fire several shots at the vehicle as McDuffie drove off, and Appellant then ran off between the buildings of the complex. *Id.* at 90, 126. McDuffie drove the victim to the Wilkes-Barre General Hospital emergency room. *Id.* at 90.

At trial, McDuffie explained that the friendship between the victim and Appellant had deteriorated approximately a week prior to the shooting. N.T., 8/19/14, at 84. While not entirely clear from the record what they were, McDuffie testified that there were "issues" existing between victim and Appellant in the days leading up to the victim's homicide. *Id.* at 83. McDuffie testified that "leading up [to] this incident, things had got [sic] out of control to [sic] the friendship." *Id.* at 84.

Dr. Ross testified that the victim suffered two gunshot wounds. N.T., 8/20/14, at 227-240. The first gunshot wound was to the victim's vulvar region. *Id.* at 232. Dr. Ross provided the following explanation regarding whether this was a lethal gunshot wound:

> Not in and of itself. It certainly is a survivable wound, even though it's to the vulvar region, even though it bled very copiously. It did not bleed enough to have – in my opinion, it did not bleed enough to have caused death in and of itself. It is certainly a medically survivable injury.
>
> * * *
>
> [The victim] died as a result of a hemorrhage from multiple gunshot wounds. This wound contributed to that hemorrhage, so this wound contributed to her death.

*Id.* at 232.

Dr. Ross further explained that the second gunshot wound was to the victim's right thigh. N.T., 8/20/14, at 233-235. Dr. Ross provided the following testimony regarding gunshot wound number two:

> [Dr. Ross:]      Gunshot wound number two is lethal in and of it[self]. Gunshot wound number two went through the soft

tissues of the thigh and tore major vessels of the right femoral artery, which is the major artery within the right leg and also the right femoral vein. This wound bled copiously and she died as a result of the extenuation of bleeding from this wound.

[Commonwealth:]    Is the femoral artery a vital part of the body?

[Dr. Ross:]      It is.

[Commonwealth:]    So [the victim] was shot in a vital part of the body, correct, Dr. Ross?

[Dr. Ross:]      Yes.

N.T., 8/20/14, at 237-238.

Thus, the evidence of record, viewed in the light most favorable to the Commonwealth, supports the conclusion that Appellant possessed the specific intent to kill the victim. The evidence reflects that Appellant and the victim had a significant disagreement in the days prior to the shooting. The falling-out was to such a degree as to result in things between the two getting "out of control." N.T., 8/19/14, at 84. The victim's desire to avoid Appellant is evidenced by the victim's direction to McDuffie to leave the area of the complex where she observed Appellant. McDuffie also knew that upon seeing Appellant, it was not wise to remain in that area. Despite McDuffie and the victim leaving the area of the complex where they first observed Appellant, Appellant pursued them to Frazier's apartment. Appellant was aggressive in approaching the victim, and obviously had some issue with the victim when he ordered her to "get the 'F' out of the car". *Id.* at 123. The victim apparently had reason to be wary of Appellant when she refused to

get out of the vehicle. Furthermore, the discord between the parties was referenced and acknowledged by the victim's comment that they had discussed an issue the day prior. Appellant proceeded to place his arm in the vehicle and shoot the victim. As reflected by the evidence, Appellant was armed when he decided to pursue and confront the victim. Accordingly, the evidence viewed in the light most favorable to the Commonwealth supports the conclusion that Appellant possessed the intentional purpose to cause the victim's death. *Jordan*, 65 A.3d at 323.

Moreover, contrary to his claim, the evidence does not support Appellant's assertion that the shooting stemmed from an angry confrontation between him and the victim and therefore occurred in the heat of passion. The parties had been at odds for the week prior to the shooting. When Appellant approached the victim, he was clearly driven by some past negative experience. Thus, there was enough cooling off time to negate any finding that Appellant acted in the heat of passion. Additionally, it is of no moment that Appellant did not have knowledge that the victim would be at the complex that day. Premeditation can be formed in a fraction of a second. *Jordan*, 65 A.3d at 323. Appellant could have decided to kill the victim the moment he saw her in the complex. Furthermore, Appellant used deadly force on a vital part of the victim's body, thereby permitting the inference of specific intent. *Id.* Accordingly, we agree with the trial court that there was sufficient evidence to support the determination that

Appellant had the specific intent to kill the victim, as required for a conviction of first-degree murder. Thus, Appellant's first claim fails.

In his second issue, Appellant argues that the trial court committed an error of law or abused its discretion by denying Appellant's requested jury instruction for voluntary manslaughter. Appellant's Brief at 5. Appellant maintains that the evidence supports the elements of voluntary manslaughter, and as such, the trial court should have issued that charge. *Id.* at 6. Specifically, Appellant contends that the evidence indicates that the parties had an argument immediately prior to the shooting that warranted the requisite instruction relevant to a "heat of passion" voluntary manslaughter offense. *Id.*

Our standard of review in assessing a trial court's jury instructions is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014). Additionally, "[i]t is clear that jury instructions regarding particular crimes or defenses are not warranted where the facts of the case do not support those

- 10 -

instructions." ***Commonwealth v. Washington***, 692 A.2d 1024, 1028 (Pa. 1997).

As noted, Appellant requested a jury instruction on voluntary manslaughter. Voluntary manslaughter is defined, in relevant part, as follows:

> **(a) General rule.--** A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> > (1) the individual killed; or
> >
> > (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

18 Pa.C.S. § 2503(a).

The facts of this case do not support a finding that Appellant's actions constituted voluntary manslaughter. As explained previously, the evidence presented at trial demonstrated Appellant possessed the specific intent to kill the victim. Contrary to Appellant's assertion, the evidence does not support the conclusion that at the time of the killing he was acting under "sudden and intense passion resulting from serious provocation." 18 Pa.C.S. 2503(a). Thus, Appellant cannot succeed on his claim that the trial court should have charged the jury on voluntary manslaughter; the evidence presented did not warrant such an instruction. ***See Commonwealth v. Walker***, 36 A.3d 1, 15 (Pa. 2011) (jury instruction regarding heat of passion and imperfect self-defense voluntary manslaughter not warranted where

evidence did not support such instruction); ***Washington***, 692 A.2d at 1028-1029 (jury instruction regarding particular defense not warranted where evidence does not support such instruction). Appellant is entitled to no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2016