**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRELL JEROME DOTSON | : | |
| | : | |
| Appellant | : | No. 1720 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 18, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003867-2021

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JANUARY 2, 2024**

Appellant Tyrell Jerome Dotson appeals from the judgment of sentence entered following his convictions for first-degree murder and related offenses. Appellant raises claims concerning the trial court's jury instructions. We affirm.

The trial court summarized the factual history of this case as follows:

On June 20, 2021, Willmar Santos Batista (hereinafter referred to as "Batista") was driving his vehicle eastbound on West Mason Avenue when he approached the intersection of South West Street in the city of York. As Batista slowed for the stop sign a pedestrian, later identified as Kimberly Metz (hereinafter referred to as "Metz"), approached the front passenger side of the vehicle. As Metz distracted Batista, an individual, later identified as Appellant, approached from a corner behind the vehicle firing at the car fifteen (15) or sixteen (16) times. Batista was shot in the head and the leg. Batista lost control of the vehicle and it struck a telephone pole. After firing the handgun, Appellant turned and ran in the opposite direction, running west on Mason Avenue. A short time later, Appellant returned to the scene and picked up what appeared to be a cellular telephone from the sidewalk and,

again, left the scene. A short time later, Appellant returned to the scene, a second time, casually walking up and retrieving a hand towel from the roadway and, again, walking away.

Barry Fuhrman (hereinafter referred to as "Fuhrman"), who resided at 29 South West Street, was watching television in his living room when he heard gunshots. A bullet came through his front living room window and lodged in the wall. Fuhrman immediately got down on the floor for a minute or so when he heard a crash outside. When Fuhrman looked outside he saw a car up against the telephone pole, on the other side of the alley, with a person slumped over the steering wheel. Fuhrman saw people start to come "after a while" and he saw a man walking down West Street. Fuhrman testified that he did not hear an argument or screaming of any kind prior to the shooting, just the gunshots. Fuhrman called 911 and reported the shooting.

The affiant, Daniel Craven (hereinafter referred to as "Craven") a detective with the York City Police Department assigned to the major crimes unit, testified that he obtained and reviewed surveillance videos from the surrounding area. Craven testified that he contacted various agencies, followed up on tips and executed search warrants in an effort to identify, and then confirm the identities of, [sic] Appellant and Metz.

Appellant and Metz were located and apprehended. During the execution of the search warrant for Metz's apartment, clothing that matched the clothes worn in the surveillance videos and a handgun, concealed in an air vent, were recovered. Through expert testimony, the handgun was identified as the weapon used to shoot Batista.

Trial Ct. Op., 3/2/23, at 2-4.

Appellant was subsequently charged with first-degree murder, person not to possess firearms, discharge of a firearm into an occupied structure, and

recklessly endangering another person (REAP).[1]  Following a jury trial, Appellant was convicted of all charges.

On September 26, 2022, following the completion of a pre-sentence (PSI) report, the trial court sentenced Appellant to life imprisonment for the first-degree murder conviction.  In addition, the trial court sentenced Appellant to serve consecutive terms of incarceration as follows: eight to sixteen years for person not to possess a firearm, six and one-half to thirteen years for discharging a firearm into an occupied structure, and one to two years for REAP.

On October 6, 2022, the Commonwealth filed a motion to modify Appellant's sentence.  The trial court scheduled a hearing, and on November 18, 2022, the trial court modified the sentence for discharging a firearm into an occupied structure to three and one-half to seven years.

Appellant filed this timely appeal on December 19, 2022.[2,3]  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

_____

[1] 18 Pa.C.S. §§ 2502(a), 6105(a)(1), 2707.1(a), and 2705.

[2] We conclude that Appellant's appeal was timely filed on December 19, 2022, because December 18, 2022, was a Sunday.  **See** 1 Pa.C.S. § 1908 (stating that, for computations of time, whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation).

[3] The trial court granted the post-sentence motion in part on November 18, 2022, and entered an amended sentencing order the same day.  Appellant's notice of appeal erroneously stated that the appeal is from the "Judgment of
*(Footnote Continued Next Page)*

Appellant presents the following issues for our review:

1. The trial court erred when it denied Appellant's request for a jury instruction for justification, defense of others.

2. The trial court erred when it denied Appellant's request for a jury instruction for voluntary manslaughter, heat of passion.

3. The trial court erred when it denied Appellant's request for a jury instruction for voluntary manslaughter, imperfect self-defense.

Appellant's Brief at 4 (formatting altered).

Each of Appellant's issues challenge the trial court's decisions to deny requested jury instructions. It is well settled that "[a] trial court's denial of a request for a jury instruction is disturbed on appeal only if there was an abuse of discretion or an error of law." *Commonwealth v. Johnson*, 107 A.3d 52, 89 (Pa. 2014) (citation omitted).

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an

_____

Sentence issued by the trial court on September 26, 2022, and Modification of Sentence on November 18, 2022." Notice of Appeal, 12/19/22, at 1. However, our caselaw has explained that where a trial court amends a judgment of sentence during the period it maintains jurisdiction, the direct appeal lies from the amended judgment of sentence. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010). Therefore, Appellant's appeal properly lies from the amended judgment of sentence entered on November 18, 2022. The caption was corrected accordingly.

omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation

omitted).

Moreover, our Supreme Court has explained:

It is settled that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested. The reason for this rule is that, instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. Accordingly, a criminal defendant must establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

***Commonwealth v. Taylor***, 876 A.2d 916, 925-26 (Pa. 2005) (citations and

quotation marks omitted).

Appellant first argues that the trial court erred when it refused

Appellant's request for a defense of others instruction.[4] ***See*** Appellant's Brief

at 15-25. Appellant contends that the trial court rejected the defense of others

instruction because the judge concluded that Appellant could not have

reasonably believed that Metz was in imminent danger of death or serious

_____

[4] As Appellant notes, he has combined issues one and three into one argument in his appellate brief. ***See*** Appellant's Brief at 4, n.1, and 15, n.7. However, we will address the issues separately.

- 5 -

injury by approaching Batista's vehicle. *See id*. at 20-23. Appellant posits that he had a reasonable belief that it was necessary to protect Metz for one of the statutorily enumerated reasons. *See id*. at 22-24. Finally, Appellant alleges that Metz could not have retreated with complete safety based on his view of the situation. *See id*. at 24-25.

The Commonwealth responds that Appellant "would be justified in using force upon the victim here only if he would be justified in using that same force to protect himself against the injury he believed was threatened to Metz; if from [Appellant's] point of view, Metz herself would be justified in using such protective force; and if [Appellant] believed that his intervention was necessary to protect Metz." Commonwealth's Brief at 11-12. The Commonwealth observes that "there was absolutely no evidence presented regarding [Appellant's] belief that Metz was in danger or that he would have been justified in using the same deadly force to protect himself" and that "[t]he only evidence offered, aside from the clear and audible surveillance videos, was a statement made by Metz to police wherein she stated that the victim was 'you know, talking with me' and that [Appellant] was a type of 'like jealous, crazy-type guy.'" *Id.* at 13 (citing N.T., Trial, 7/20/22, at 377).

Regarding justification for the use of force for the protection of other persons, our legislature has defined the defense as follows:

> **(a) General rule. —** The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. § 506(a); *see also* 18 Pa.C.S. § 505(a) (stating that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion").

"While there is no burden on a defendant to prove the self-defense claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

This Court has reiterated that the justified use of deadly force requires evidence that:

a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014) (quoting

***Commonwealth v. Harris***, 665 A.2d 1172, 1174 (Pa. 1995)).

> In the instant case, the trial court explained:

> Here, the evidence at trial failed to establish a claim of self-defense.  The surveillance video marked as Commonwealth Exhibit 2, published to the jury, shows Metz approach Batista's vehicle on the passenger side and within a second or two Appellant running at the vehicle from behind it while shooting at the vehicle containing Batista.  Cmw. Ex. 2.  The video had audio capabilities; however, there were no raised voices or loud sounds until the gunshots could be heard.[5]    In addition to observing Batista on the driver's side of the vehicle, several witnesses also testified that was the case.

> Since Batista was in the driver's seat and Metz approached the passenger side window outside of the vehicle, this court finds it unlikely that Metz was free from fault in provoking or continuing the difficulty which resulted in Batista's death.  Additionally, given that Appellant entered Mason Avenue from a side street and immediately began shooting at Batista from behind, this court found that Appellant did not have a reasonable belief that Metz was in imminent danger of death or great bodily harm.  In light of their positions in relation to Batista, Appellant and Metz had the opportunity and ability to retreat from Batista; instead, both moved towards him.

> As a result, this court determined that Appellant did not meet the three elements necessary for a claim of self-defense or defense of others and therefore was not entitled to a jury instruction on justification as a matter of law.

Trial Ct. Op., 3/2/23, at 16-17 (citations omitted and formatting altered).

---

[5] We note that, the surveillance video was not included in the certified record received by this Court.  However, at trial, Detective Daniel Craven of the York City Police Department gave a detailed explanation of what was depicted on the surveillance video.  ***See*** N.T., 7/19/22, at 129-139.  Detective Craven's descriptions are identical to the trial court's rendering of the events.

Following our review of the record and the relevant law, we agree with the trial court that a jury instruction pertaining to the defense of others did not apply to the facts of this case. *See Torres*, 766 A.2d at 345. The record reflects that when Batista stopped his vehicle on the street, Metz approached the front passenger window, at which time Appellant approached the rear of the vehicle and began to fire gunshots. *See* N.T., 7/19/22, at 131-32. Although the video contains audio, there was no evidence of an altercation, yelling, or fighting between Batista and Metz. *See id*. In essence, there was no evidence suggesting that Metz was in any danger. Accordingly, due to the lack of evidence of any type of dangerous incident or potential harm posed by Batista to Metz at the time of the murder, we conclude that a jury instruction pertaining to the defense of others was not warranted. *See Torres*, 766 A.2d at 345. Therefore, Appellant is not entitled to relief.

In his second issue, Appellant argues that the trial court improperly denied his request for a jury instruction on heat of passion voluntary manslaughter. *See* Appellant's Brief at 28-30. Appellant asserts that Metz informed Detective Craven that Batista had harassed and threatened her, and that Appellant was jealous and became enraged when Metz spoke with other men. *See id*. at 29. Appellant posits that the evidence supports him "becoming so impassioned about Metz that he flew into a rage and began shooting at Batista when he saw [Metz] interacting with [Batista] at his

passenger window." *Id*. He concludes that the evidence compelled a heat of passion instruction. *See id*. at 30.

Generally, an intentional killing constitutes first-degree murder. *See* 18 Pa.C.S. § 2502(a). Nevertheless, voluntary manslaughter is "an intentional killing ... committed as a result of an unreasonable belief in the need for deadly force in self-defense." *Commonwealth v. Washington*, 692 A.2d 1024, 1029 (Pa. 1997); *see also* 18 Pa.C.S. § 2503(b).

Our Crimes Code states that a defendant may commit voluntary manslaughter if he kills another while "acting under a sudden and intense passion resulting from serious provocation by" the victim. 18 Pa.C.S. § 2503(a)(1). Consequently, a jury instruction for voluntary manslaughter relating to "heat of passion" is appropriate where the evidence suggests "that, at the time of the killing, [the a]ppellant acted under a sudden and intense passion resulting from serious provocation by the victim." *Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013) (citation omitted). "If any of these be wanting — if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." *Id*. at 980 (citation and internal quotation marks omitted).

The test for serious provocation is "whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." *Commonwealth v. Montalvo*,

986 A.2d 84, 100 (Pa. 2009). Our Supreme Court "has repeatedly held since 1983 that a murder defendant is entitled to a jury instruction on the lesser offense of voluntary manslaughter only where there is sufficient evidence to support such a verdict." *Commonwealth v. Cook*, 952 A.2d 594, 633 (Pa. 2008) (citation omitted).

Here, the trial court concluded that the evidence did not support a heat of passion voluntary manslaughter instruction because there was insufficient evidence of Appellant's intense passion resulting from a provocation. *See* Trial Ct. Op., 3/2/23, at 19-20. In reaching that conclusion, the trial court explained that "even if Appellant was impassioned, . . . there was a period of time, sufficient for a cooling off period, between the first alleged interaction and the time of the shooting." *Id*. at 20.

Following our review of the record, we agree with the trial court that there was no evidence demonstrating that Appellant was acting under a sudden and intense passion resulting from serious provocation by Batista that would have supported a heat of passion instruction. *See Sanchez*, 82 A.3d at 979. Indeed, there is no evidence that Batista did or said anything to Appellant that would rise to the level of a serious provocation or that he reacted to a provocation without an intervening cooling-off period. *See id*. Because the record did not support a finding that Appellant "became impassioned to the extent that his mind was incapable of cool reflection," the trial court acted within its discretion in denying a voluntary manslaughter instruction. *See Montalvo*, 986 A.2d at 100. Therefore, Appellant is not entitled to relief.

In his third issue, Appellant argues that the trial court erred in denying his request for a jury instruction on imperfect self-defense. ***See*** Appellant's Brief at 25-27. Appellant contends that the trial court improperly "determined that counsel's argument that Metz felt she was being preyed upon by Batista was a leap too far for a self-defense instruction." ***Id.*** at 26 (citing N.T., Trial, 7/21/22, at 418).

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.[] § 505(a). If the defender did not reasonably believe deadly force was necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable. A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

***Commonwealth v. Truong***, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (certain citations and quotation marks omitted).

> Here, the trial court addressed Appellant's claim as follows:

> The surveillance videos, viewed by the jury, show Metz on the sidewalk turn and approach the vehicle then lean toward the passenger side window. The video then shows Appellant walk around a corner, onto Mason Avenue, and then begin running towards Batista's vehicle while firing a gun at Batista. The video then shows Appellant turn and run back the way he came only to reappear, twice, to retrieve a phone and a towel, respectively.

Trial Ct. Op., 3/2/23, at 20-21.

Following our review of the record, there is no evidence supporting Appellant's claim that he misapprehended what he saw when he rounded the corner of the building and acted unreasonably under the circumstances. Upon review of the record, we cannot conclude that Appellant possessed an actual, but unreasonable, belief that deadly force was necessary, which would have supported an imperfect self-defense instruction. Rather, the evidence supports the reasonable inference that Appellant provoked the incident because, only seconds after Metz approached Batista's front passenger window, Appellant appeared behind the vehicle and fired more than a dozen shots into Batista's car, when Appellant and Metz could have retreated safely if necessary. *See Truong*, 36 A.3d at 599. Therefore, we discern no abuse of discretion by the trial court in rejecting Appellant's request for an instruction on imperfect self-defense. *See id*. Accordingly, Appellant is not entitled to relief. For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/2/2024