**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERROL WILEY | : | |
| | : | |
| Appellant | : | No. 315 EDA 2020 |

Appeal from the PCRA Order Entered December 19, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012801-2011

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.: **FILED OCTOBER 02, 2020**

Appellant, Errol T. Wiley appeals, *pro se*, from the order entered on December 19, 2019, in the Court of Common Pleas of Philadelphia County, denying, without a hearing, his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA).[1] Wiley seeks relief from the judgment of sentence of life without the possibility of parole, imposed after a jury convicted him of one count each of murder in the first degree, burglary, and possession of an instrument of crime ("PIC").[2] Wiley contends the PCRA court erred in denying relief because he asserts both trial and appellate counsel were ineffective. Based on the following, we affirm.

---

[1] 42 Pa.C.S.A. §§ 9541–9546.

[2] 18 Pa.C.S.A. §§ 2501(a), 3502(a), and 907(a), respectively.

We take the underlying facts and procedural history in this matter from this Court's decision on direct appeal and our independent review of the certified record. We particularly rely upon the notes of testimony from Wiley's February 2013 trial.

Wiley had been in a relationship with Robin Williams ("the Victim"), for several years. In June 2011, the Victim broke up with Wiley, moved out of his home, and did not provide him with her new address. The two remained in contact via text messages. Throughout the summer of 2011, Wiley continually asked the Victim to move back in with him and attempted to obtain her address.

On September 1, 2011, Wiley drove his employer's van to the Victim's place of employment.[3] He accosted the Victim as she was leaving work; during the ensuing conversation, Wiley grabbed the Victim's arm, causing her to drop her cell phone, which he then took. The Victim, visibly upset, ran back to her office.

While examining the phone, Wiley ascertained the Victim had recently begun a relationship with another man. Wiley began calling all the contacts on the Victim's phone, and, using subterfuge, was able to obtain her address. Wiley also called Ernest Fraley, the Victim's new boyfriend. Wiley identified

---

[3] His employer equipped the van with a GPS device to track employees' use. The Commonwealth entered the GPS records for the relevant periods into evidence at trial.

himself as the Victim's boyfriend and, during the conversation, Wiley told Fraley the Victim owed him money and stated, "I'm going to get mine one way or the other." N.T., Jury Trial, 2/05/13, at 93.

During the next several hours, Wiley attempted to locate the Victim at her residence. On the first occasion, he ran into the Victim's friend Rosa King. King told Wiley he should not be at the Victim's residence, and observing the Victim's phone in his hand, asked for it back. Wiley refused.

On the second occasion, Wiley placed photographs he had taken from his residence on the outside of an air conditioner in the window of the Victim's apartment. The Victim's neighbor, Cornelia Stamford, saw the photographs.

On the third occasion, Wiley attempted, unsuccessfully, to break through the doors. He then pushed the air conditioner in the Victim's window into her apartment, entered the apartment through that window, and chased the Victim out of the apartment.

Stamford heard the Victim cry, "He's in here, he's in here." N.T., Jury Trial, 2/06/13, at 12. Stamford came out of her apartment into the common hallway and saw Wiley holding the Victim by her head. Wiley then let go of the Victim and ran out of the building towards the street.

He turned back and the Victim tried to the hold the door closed. However, Wiley pushed through the door, knocking the Victim on her back, he then pulled out a knife and stabbed the Victim fourteen times. *Id.* at 13-

15. Wiley then fled. Stamford ran for help and located police, but they could not revive the Victim.

The police were unable to apprehend Wiley for approximately two weeks. During that period, Wiley spoke with people on the Victim's contact list and admitted to killing the Victim, telling one person, "I gutted her[,]" and "I'm not going to jail for her." N.T., Jury Trial, 2/07/13, at 46-47.

During this period, Wiley carjacked a vehicle in New Jersey. He began to use it to work as a hack driver. On September 13, 2013, the Philadelphia police surrounded the car but only the passengers were in it. The police saw Wiley hiding in some grass and apprehended him after a foot chase. They took Wiley to the hospital for treatment of injuries sustained during the arrest, Wiley told hospital staff, "I killed that bitch." N.T. Trial, 2/06/13, at 77. Wiley also gave a statement to the police wherein he admitted killing the Victim.

On February 8, 2013, the jury found Wiley guilty of the charges. The trial court immediately imposed the mandatory sentence of life without possibility of parole for murder in the first degree. It did not impose any further sentence on the burglary and PIC charges.

On June 24, 2014, this Court affirmed the judgment of sentence. **See Commonwealth v. Wiley**, 105 A.3d 41, No. 1800 EDA 2013 (Pa. Super., filed June 24, 2014) (unpublished memorandum). On November 26, 2014, the Pennsylvania Supreme Court denied Wiley's petition for leave to appeal. **Commonwealth v. Wiley**, 104 A.3d 4 (Pa. 2014).

On March 18, 2015, Wiley filed the instant, timely PCRA petition. The PCRA court appointed counsel, who filed an amended petition. Subsequently, Wiley filed a motion for leave to proceed *pro se*, which, following a hearing,[4] the PCRA court granted. On April 17, 2018, Wiley filed a second amended PCRA petition. In November 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss. Wiley filed a response to the Rule 907 notice, and, on December 17, 2019, the PCRA court dismissed the petition. This timely appeal followed.[5]

Wiley challenges the denial of his PCRA petition. Our standard of review is well settled:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, [w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. [W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014) (quotation marks and citations omitted).

---

[4] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[5] The PCRA court did not order Wiley to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal; the court issued its opinion on February 26, 2020.

- 5 -

Here, Wiley contends both trial and appellate counsel were ineffective. Generally, we presume counsel is effective. *See Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, Wiley must establish: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). We will deny a claim if the petitioner fails to meet any one of these prongs. *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

In his first and third claims, Wiley contends he received ineffective assistance of trial counsel. *See* Appellant's Brief, at 17-22, 29-36. Specifically, Wiley complains counsel failed to investigate and present a justification defense; failed to withdraw from the case despite a conflict of interest; and failed to either move for a mistrial or object to the Commonwealth's opening statements and closing argument. *See id.* He claims the PCRA court erred in failing to grant him relief on these assertions. We disagree.

Wiley first argues counsel failed to investigate his claim of justification. Our Supreme Court has stated, "[c]ounsel has a general duty to undertake

reasonable investigations or make reasonable decisions that render particular investigations unnecessary." ***Commonwealth v. Basemore***, 744 A.2d 717, 735 (Pa. 2000) (citation omitted). "Counsel's failure to prepare for trial is simply an abdication of the minimum performance required of defense counsel." ***Commonwealth v. Brooks***, 839 A.2d 245, 248 (Pa. 2003) (citation and internal quotation marks omitted). "The reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." ***Commonwealth v. Hughes***, 865 A.2d 761, 813-14 (Pa. 2004).

Initially, it is not readily apparent from Wiley's brief what further information he believed counsel needed to investigate. As delineated above, Stamford witnessed the Victim's murder and testified, unequivocally, Wiley chased the unarmed Victim, left the building, returned, overpowered the Victim, and stabbed her. The only witnesses to what occurred prior to the murder during the period between when Wiley broke into the apartment[6] and when he chased the Victim out of the apartment were Wiley and the Victim. Thus, there was nothing there for counsel to investigate.

Following the murder, Wiley fled the scene and eluded the police for approximately two weeks. Wiley admitted he did not seek any medical treatment for his alleged injuries, which he treated with Band-Aids. N.T. Jury

_____

[6] We note Wiley characterizes the evidence in the light most favorable to himself, not the Commonwealth as verdict winner.

- 7 -

Trial, 2/07/13, at 121. He further acknowledged he did not tell the doctor who treated him following his arrest or Detective Fetters about a head wound he claimed the Victim had given him. *Id.* at 169. He also agreed he had not shown the doctor what he claimed to be a stab wound on his leg. *Id.* at 169-71.

At trial, Dr. Lori Swisher, an emergency room physician at Mercy Hospital, stated she treated Wiley after his arrest. She testified he had recent injuries to his forearms and elbow but older injuries, which she described as "superficial abrasions, lacerations" on his hands. N.T. Trial 2/07/13, at 10-11. She did not testify these were stab or puncture wounds. *See id.* Detective Fetters also testified Wiley had healing lacerations on his hands and leg. N.T., Jury Trial, 5/08/13, at 15. Wiley has not identified any further medical records that would have substantiated his claims.

Thus, Wiley has failed to explain what he wanted counsel to investigate and has not discussed how this alleged failure to investigate prejudiced him. Accordingly, we find Wiley has failed to set forth the ineffectiveness analysis required by *Strickland v. Washington*. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because Wiley has not established any of the three prongs with respect to his failure to investigate claim, he has not established the PCRA court erred. *See Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (holding where appellant fails to prove any one of three prongs of ineffectiveness test, he does not meet his burden of proving

ineffective assistance of counsel, and counsel is deemed constitutionally effective).

Wiley next avers counsel was ineffective for failing to present a justification defense. With respect to self-defense, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of *unlawful* force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a) (emphasis added).

In order to successfully claim self-defense, Wiley was required to establish three elements: (1) he reasonably believed he was in imminent danger of death or serious bodily injury and the use of deadly force was necessary to prevent such harm; (2) he did not provoke the incident which resulted in the use of force; and (3) he did not violate any duty to retreat. *See Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012) (citations omitted). Although the defendant has no burden to prove self-defense, before the defense is properly at issue, there must be some evidence to justify such a finding. *See id.* at 740. Once a defendant has done so, the burden of disproving self-defense beyond a reasonable doubt rests with the Commonwealth. *See id.* at 740-41. The Commonwealth may reach its burden by negating any one of the three elements. *See id.*

The PCRA court concluded that Wiley had failed to establish that he suffered any prejudice from counsel's decision not to present a justification defense. ***See*** PCRA Court Opinion, 2/26/20, at 6-8.

We agree. We have carefully scrutinized the record, which demonstrates Wiley could not have maintained a justification defense. The record shows he was the initial aggressor, had ample opportunity to retreat, and, in fact, did retreat, leaving the building only to return, pull out a knife and stab an unarmed woman fourteen times, including two fatal stab wounds. These actions are completely inconsistent with a justification defense. ***See Commonwealth v. Truong***, 36 A.3d 592, 599-600 (Pa. Super. 2012) (*en banc*) (holding evidence appellant stabbed unarmed victim nineteen times sufficient to negate claim of self-defense); ***Commonwealth v. Washington***, 692 A.2d 1024, 1029 (Pa. 1997) (based on number and severity of victim's wounds, defendant used more force than reasonably necessary to protect self from serious bodily injury and shooting was therefore not in self-defense). The PCRA court did not err in denying relief on this claim.

Wiley also claims counsel should have recused himself because of a conflict of interest. Namely, counsel wished to present a heat-of-passion defense while Wiley wished to present a justification defense. ***See*** Appellant's Brief, at 19-22.

We presume Wiley framed his issue in terms of a conflict of interest in order to relieve himself of the burden of establishing prejudice. ***See***, ***e.g.***,

*Commonwealth v. Brown*, 18 A.3d 1147, 1155 (Pa. Super. 2011) (noting that a prejudice is presumed in cases where counsel had an actual conflict of interest). The United States Supreme Court has held, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (footnote omitted). The Supreme Court later stated, "it [is] at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 174 (2002). Further,

> [t]o establish a breach of [counsel's duty of loyalty], the client must show the existence of an actual conflict of interest that adversely affected the outcome of the case. An actual conflict of interest is evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action.

*Commonwealth v. Tedford*, 960 A.2d 1, 54 (Pa. 2008) (citations and quotation marks omitted).

Here, Wiley has not pled or identified any actual conflict of interest. Counsel may have disregarded Wiley's desires, but there is nothing that suggests that counsel's actions were motivated by anything other than Wiley's best interests. Since Wiley has not established that there was a conflict of interest, no presumption of prejudice applies. And since we have already concluded that Wiley did not suffer any prejudice by counsel's failure to

- 11 -

present a justification defense, he cannot establish the PCRA court erred in denying relief on this issue.

Wiley next argues trial counsel should have objected to a plethora of remarks made by the Commonwealth during opening statements and closing argument and moved for a mistrial. *See* Appellant's Brief, at 29-36. Specifically, Wiley objects to two portions in the Commonwealth's opening statements and two in its closing argument, where the prosecutor claimed Wiley tried to take money from the Victim's purse. *See* Appellant's Brief, at 31; N.T. Trial, 2/05/13, at 40, 46; N.T. Trial 2/08/13, at 62-63, 87-88. He also complains of several instances during both opening statements and closing argument, where the Commonwealth stated he stalked the Victim. *See* Appellant's Brief, at 32; N.T., Jury Trial, 2/05/13, at 33, 37, 39, 45-56; N.T., Jury Trial, 2/08/13, at 83. Wiley avers remarks made by the Commonwealth during closing argument were unduly prejudicial because the prosecutor stated Wiley either lied during his testimony or "put a spin on the case." *See* Appellant's Brief, at 33; N.T., Jury Trial, 2/08/13, at 51, 53, 57-58, 60, 78, 83, 90. Lastly, Wiley contends the prosecutor committed factual errors during both opening statements and closing argument with respect to the number of stab wounds. *See* Appellant's Brief, at 34; N.T. Trial 2/05/13, at 38; N.T. Trial, 2/08/13, at 52, 62, 67, 86. We disagree.

To establish arguable merit for his claim that counsel was ineffective in failing to object to comments made by the prosecutor to the jury, Wiley is required to show more than mere overzealous advocacy:

> It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Bronshtein*, 691 A.2d 907, 917 (Pa. 1997) (citations omitted).

An opening statement must contain "fair deductions from the evidence which the prosecutor expects will be presented at trial." *Id.* at 918 (citations omitted). As to closing arguments, they

> must be considered in the context of the entire . . . summation and allegations of prosecutorial misconduct will not warrant the grant of a new trial unless they are such as to arouse the jury's emotions to such an extent that it is impossible for the jury to reach a verdict based on relevant evidence.

*Id.* (citation omitted). Prosecutors may employ reasonable "oratorical flair" in their statements to the jury. *Id.* Additionally, where the trial court clearly instructs the jury that the prosecutor's comments are not evidence, we presume the jury followed the instruction. *Id.*

In its Rule 1925(a) opinion, the PCRA court concluded Wiley's claims lacked merit because the complained of statements "were either based on the evidence itself or inferences therefrom." PCRA Court Opinion, 2/26/20, at 14.

- 13 -

It found all the arguments to be "evidence based and/or proper rebuttal to arguments raised by defense counsel." *Id.* at 15. We agree.

The remarks made by the Commonwealth about Wiley rifling the Victim's purse were clearly evidence-based. Ernest Fraley, the Victim's boyfriend, testified Wiley told him the Victim owed him money and he was "going to get mine one way or the other." N.T., Jury Trial, 2/05/13, at 93. Photographs taken at the crime scene and entered into evidence showed blood on the Victim's purse and the contents strewn about the floor. *See id.* at 116-17. These arguments pertained to the burglary charge and were clearly reasonable inferences from the evidence at trial.

Further, the record is replete with evidence Wiley stalked the Victim. As discussed above, Wiley texted the Victim repeatedly during the summer of 2011 in an attempt to find out her address. On the day of the murder, he accosted her at work, took her phone, began calling all the contacts on her phone, used subterfuge to obtain her address, and showed up at her residence twice on the evening in question trying to locate her, before finally breaking into her apartment and killing her on the third visit. Certainly, it was reasonable to describe this behavior as "stalking."

In addition, claiming Wiley was "spinning" the facts of the case was proper response to his testimony at trial and defense counsel's closing argument. Wiley claimed that: he never stalked the Victim, she voluntarily left her phone with him, he went to her apartment in order to return some of

her possessions, and that she took the air conditioner out of the window, pulled him into the apartment, and stabbed him repeatedly without provocation. N.T., Jury Trial, 2/07/ 13, at 89-90, 110-12, 117-120. In closing argument, defense counsel claimed, the Victim had "played [Wiley] for a fool" for months; he dumped her clothing in front of her place of employment in a fit of anger; she attacked him; and he killed her in the heat of passion. N.T. Trial, 5/08/13, at 42-48. These statements flatly contradicted the testimony of all of the witnesses, Wiley's own prior statements, and the cell phone and GPS records obtained by the Commonwealth. Thus, it was well within the province of the prosecutor to say Wiley was attempting to "spin" the evidence. *See Commonwealth v. D'Amato*, 526 A.2d 300, 309 (Pa. 1987).

Lastly, in opening statements, the Commonwealth stated the Victim had eight major stabs wounds as well as "several others." The prosecutor also stated during closing statements that Wiley stabbed the Victim fourteen times.[7] N.T. Trial, 2/05/13, at 38; N.T. Trial, 2/08/13, at 52, 62, 67. The medical examiner, Dr. Marlon Osborne, testified the Victim received eight more serious stab wounds and six incised stab wounds. N.T. Trial, 3/07/13, at 31-33. Thus, the Commonwealth correctly stated the facts regarding the number of stab wounds. The Commonwealth's statement the knife broke in

---

[7] During cross-examination of Wiley, the Commonwealth mistakenly stated he stabbed the Victim fifteen times. *See* N.T., Jury Trial, 2/07/13, at 178. However, we fail to see how this this minor misstatement prejudiced Wiley.

Wiley's hand while he was stabbing the Victim was also a fair inference from the evidence at trial. *See*, *e.g.*, N.T., Jury Trial, 2/05/13, at 109, 118.

In sum, we cannot say any of these remarks were improper. Wiley cannot establish any of the proposed objections would have been granted by the trial court. Accordingly, no relief is due on Wiley's claim trial counsel was ineffective for failing to move for a mistrial in response to the Commonwealth's opening statements and closing argument. *See Commonwealth v. Ogrod*, 839 A.2d 294, 325 (Pa. 2003) (declining to find counsel ineffective for failing to move for mistrial where claim lacked arguable merit).

In his remaining claim, Wiley alleges he received ineffective assistance of appellate counsel. *See* Appellant's Brief, at 23-28. Specifically, he alleges appellate counsel failed to raise three claims on appeal: (1) that the evidence was insufficient to sustain his convictions for burglary and PIC; (2) that his convictions for burglary and PIC were against the weight of the evidence; and (3) that the trial court erred in denying his motion to suppress. *Id.*

Our standard of review is as follows. We review claims of appellate counsel ineffectiveness similarly to claims that trial counsel was ineffective:

> [W]e begin with the presumption that counsel is effective. To prevail on an ineffectiveness claim, [a]ppellant must satisfy, by a preponderance of the evidence, the performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has divided the performance component of *Strickland* into two subparts dealing with arguable merit and reasonable strategy. *Commonwealth v. Baumhammers*, 625 Pa. 354, 92 A.3d 708, 719 (Pa. 2014); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987). With regard to "reasonable basis"

in the appellate context, "[i]t is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success." *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032, 1043 (Pa. 2012). *See also Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460, 479 n.28 (Pa. 2004), *cert denied*, 546 U.S. 983, 126 S.Ct. 559, 163 L.Ed.2d 470 (2005) ("Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Accord *Jones v. Barnes*, 463 U.S. 745, 746, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To establish *Strickland*/*Pierce* prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance.

*Commonwealth v. Blakeney*, 108 A.3d 739, 749-750 (Pa. 2014).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit . . ." *Commonwealth v. Pierce*, 645 A.2d 189, 194 (Pa. 1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Taylor*, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted). Here, our review of the applicable law demonstrates Wiley's claims lack arguable merit.

Wiley first claims appellate counsel was ineffective for failing to challenge the sufficiency of the evidence underlying his convictions for

burglary and PIC. Here, we need not address the first two prongs of the *Strickland* test because Wiley has failed to show prejudice. *See Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995) (concluding that when assessing claim of ineffectiveness, when it is clear appellant has failed to meet prejudice prong, court may dispose of claim without determination of whether first two prongs have been met).

The record reflects the trial court did not impose any sentence on the burglary or PIC charges. *See Commonwealth v. Wiley*, 105 A.3d 41, No. 1800 EDA 2013, at 3 (Pa. Super., filed June 24, 2014) (unpublished memorandum). Therefore, even if counsel had pursued the issue, a reversal on those charges would have had no effect on Wiley's mandatory life sentence for murder in the first degree, for which this Court held "[t]he evidence was overwhelmingly sufficient." *Id.* at 6. Wiley cannot establish that he was prejudiced by appellate counsel's decision. Accordingly, the PCRA court did not err in denying him relief on this claim.

Wiley next claims appellate counsel was ineffective for failing to challenge the weight of the evidence underlying his burglary and PIC convictions. However, there is simply no factual basis to support this contention. The record reflects while Wiley's counsel limited the sufficiency challenge to murder in the first degree, there was no such limitation regarding the weight challenge. *Id.*, at 3. This Court then proceeded to address and reject the weight claim on the merits. *Id.* at 10-11. Therefore, there is no

basis to upset the PCRA court's finding Wiley was not entitled to PCRA relief on this basis.

Lastly, Wiley claims appellate counsel was ineffective for failing to challenge the denial of his motion to suppress on appeal. Wiley contends the issue raised in his motion to suppress was the voluntariness and knowingness of his waiver of his **Miranda** rights.[8] **See** Appellant's Brief, at 26-27. The PCRA court concluded that even if Wiley had succeeded in his suppression motion and had his statements to police suppressed, he cannot establish that the outcome of trial would have been different. We agree.

As we discussed above, and in our decision on direct appeal, the evidence of Wiley's guilt was overwhelming. In our lengthy discussion of the sufficiency of the evidence on direct appeal, this Court did not even mention Wiley's statement to police. **See Wiley**, No. 1800 EDA 2013, at 4-7. Instead we found the evidence was sufficient to sustain his convictions based upon: (1) the evidence Wiley tracked the Victim down; (2) the eyewitness testimony of Stamford; (3) the medical evidence Wiley stabbed the Victim fourteen times, including two fatal wounds to vital parts of the body; (4) his post-incident behavior including his statements to a friend of the Victim's, his fleeing the scene, and statements to medical personnel after apprehension.

_____

[8] **Miranda v. Arizona**, 384 U.S. 436 (1966).

*See id.* Thus, Wiley has not shown suppression of his statement to the police would have changed the result at trial. This claim does not merit relief.

Accordingly, for the reasons discussed above, we affirm the order denying Wiley's PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/20