J-S27007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY LAMAR MCWHITE | : | |
| | : | |
| Appellant | : | No. 61 WDA 2021 |

Appeal from the PCRA Order Entered February 26, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0001700-2010

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:            **FILED: DECEMBER 30, 2021**

Appellant, Anthony Lamar McWhite, appeals from the order entered on February 26, 2021, which denied his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The facts and procedural history of Appellant's case are as follows.  On May 3, 2010, Appellant was charged with homicide.[1]  PCRA Court Opinion,[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2501.

[2] The Honorable Debra A. Pezze presided over Appellant's underlying jury trial proceedings and the beginning of his PCRA proceedings.  Judge Pezze authored the first PCRA Court Opinion, entered January 8, 2015. Judge Pezze passed away in 2016 and, thereafter, Appellant's case was reassigned to the Honorable Timothy A. Krieger.  Judge Krieger authored the PCRA Court Opinion, entered February 25, 2021.

2/25/21, at 1. The PCRA court aptly summarized the relevant evidence adduced at trial:

> On April 3, 2010, at approximately 8:49 p.m., Shawntez "Sleeze" Weems was shot in the back while on his way to make a drug sale, walking down Constitution Boulevard, in the City of New Kensington, Westmoreland County, Pennsylvania. Eight discharged cartridge casings consistent with a .40 caliber gun were discovered in an area between an abandoned building and an apartment building located on Constitution Boulevard.
>
> Shortly before the shooting, a witness saw [Appellant] standing in the shadows across the street from Weems's residence. Two witnesses saw Weems come out of his house and walk down the street. They then saw [Appellant] follow him. Several minutes later, they heard gunshots.
>
> The Commonwealth additionally provided evidence that on May 29, 2008, [Appellant] was pistol whipped and robbed. [Appellant] learned that Weems was involved in this incident and, in the aftermath, made threats to retaliate against him. One of the Commonwealth witnesses testified that shortly before Weems was shot, [Appellant] said that he was going to kill him. Another testified that he saw [Appellant] in the afternoon on the day Weems was shot and heard [Appellant] say that he was going to "put a cap in Sleeze" because Sleeze took his drugs and money and that they could "get" Sleeze "outside of his crib, referring to his house."
>
> Sheldon "Pete" Pinnock, and Erica O'Neal, Pinnock's girlfriend, were at the mall on the night Weems was killed. Pinnock received a telephone call from [Appellant] who said that he was walking behind Weems and that he "had the drop on him." [Appellant] asked Pinnock to pick [Appellant] up at Pinnock's girlfriend's house. In a subsequent telephone call, [Appellant] told Pinnock that he shot Weems. Pinnock met [Appellant] and drove him to his car. On the ride to [Appellant's] car, [Appellant] told Pinnock that he had just shot at Sleeze with a .40 caliber gun. [Appellant] asked Pinnock to get rid of the gun for him and told Pinnock that he had hidden it in a bag under the porch stairs at Pinnock's girlfriend's house.
>
> After dropping off [Appellant], Pinnock retrieved the gun and gave it to Don Moyer with instructions to take the gun to Esquipula

"Polo" Griego's house. A week or so later, Pinnock went to jail and telephoned Griego, telling him to throw the gun in the river. Subsequently, Griego took police to the place where he disposed of the firearm. Divers were able to locate and secure the gun from the water. The firearm found in the river was a .40 caliber Glock handgun. An analysis of tool markings associated with this weapon showed that all eight cartridge casings found between the buildings on Constitution Boulevard were discharged from it.

Latoyia Graves testified that she was [Appellant's] girlfriend and that she was with [Appellant] on April 3, 2010. On that date, the two rode dirt bikes into the early evening. Around 7:00 p.m., they went to [Appellant's] mother's house, located on Fifth Avenue in the City of New Kensington. [Appellant's] mother's house was "close to a mile" from where Weems was killed. [Appellant] took a shower and then Graves took a shower. [Appellant], without Graves, left the house for about [20] or [30] minutes. Graves testified that she and [Appellant] then went to Pittsburgh after it was dark outside but before 8:00 p.m.

On direct examination, Graves acknowledged that she had been convicted of [r]eceiving [s]tolen [p]roperty in 2003 and volunteered that she was "on [f]ederal probation, supervised release, for distribution of crack cocaine." On cross-examination, the prosecutor asked Graves two questions about the sentence she received in federal court. On re-direct examination, counsel for [Appellant] asked Graves if she was doing well while on federal probation. The court sustained the prosecutor's objection after defense counsel stated before the jury that Graves has "absolutely no problem on probation, going to school, that she has a good relationship with her probation officer." No instruction to disregard counsel's statement was requested by the prosecutor or given by the court. Additional testimony was offered that, at one point during the investigation, Graves was interviewed by police at the Federal Probation Office.

On May 2, 2010, Officer Samuel Long, of the New Kensington Police Department, saw [Appellant] driving a black Buick with tinted windows. He knew that there was an arrest warrant for [Appellant]. This warrant was issued for criminal charges not in connection with the homicide. As officers followed [Appellant's] car, [Appellant] jumped out of the vehicle. [Appellant] was found hiding under a nearby car and taken into custody.

Marvin Ainsco, in a non-responsive answer to a question by the prosecutor, stated that he knew [Appellant] as a "drug dealer." Another witness, Erin Jarosinski, testified that she was with [Appellant] on January 12, 2010, when he made statements threatening the victim. She said that they had been going together to get drugs and that she knew [Appellant] because he sold drugs. Jarosinski also admitted that she was a drug addict during the time she knew [Appellant]. No other reference was made to drug dealing activity on the part of [Appellant].

*Id.* at 4-7 (citations to the record omitted). On July 17, 2012, a jury found Appellant guilty of murder in the first degree and Appellant was sentenced to life without the possibility of parole. *Id.* Appellant's judgment of sentence was affirmed on August 23, 2013. *See Commonwealth v. McWhite*, 2013 WL 11256408 (Pa. Super. 2013) (unpublished decision).

Relevant to the current appeal, the PCRA court summarized:

On October 8, 2013, [Appellant], acting *pro se*, filed a timely [PCRA] petition[.] Issues raised in this *pro se* petition were: (1) [i]neffective assistance of counsel in failing to object to references to [Appellant] as a "known drug dealer"; (2) [i]neffective assistance of counsel in failing to object to evidence that the police arrested [Appellant] on a warrant issued for other criminal offenses; and (3) [i]neffective assistance of counsel in failing to object to a jury instruction regarding flight as evidence of guilt. Counsel was appointed to represent [Appellant] in this proceeding.

On February 25, 2014, an amended PCRA petition was filed by counsel on [Appellant's] behalf. This counseled petition raised the issues set forth in [Appellant's] *pro se* petition as well as an additional issue of ineffectiveness of counsel for failing to object to evidence that [Appellant's] *alibi* witness had been convicted of cocaine distribution.

On September 16, 2014, counsel filed a second amended PCRA petition raising the issue of ineffectiveness of counsel for failing to call Austin King, an [additional] *alibi* witness for [Appellant].

- 4 -

PCRA Court Opinion, 2/25/21, at 2. On January 8, 2015, the PCRA court filed an opinion addressing Appellant's issues and an order giving notice of its intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907. **See** PCRA Court Notice of Intent to Dismiss, 1/8/15. On January 21, 2015, Appellant, through counsel, filed a response to the PCRA court's notice, within which he requested to further investigate and develop his claim with respect to *alibi* witness Austin King. **See** Response to Notice of Intent to Dismiss, 1/21/15. On March 27, 2015, the PCRA court granted Appellant's request to further develop his *alibi* witness claim and elected not to issue an order formally dismissing his other claims at that time. **See** PCRA Court Order, 3/27/15.

In the ensuing years, Appellant, through various appointed counsel, pursued investigation of his *alibi* witness claim. **See** PCRA Court Opinion, 2/25/21, at 3. Ultimately, an evidentiary hearing was held on December 18, 2020, at which time Appellant withdrew his PCRA claim "insofar as it raised [the issue concerning ineffectiveness of counsel in failing to investigate and call Austin King as an *alibi* witness for [Appellant]." **Id.** at 3-4. Accordingly, the PCRA court entered a final order denying and dismissing Appellant's PCRA petition on February 26, 2021. This appeal followed.[3]

---

[3] Appellant filed a notice of appeal on January 4, 2021, prior to the PCRA court's final order entered on February 26, 2021. We treat his notice of appeal as timely filed on the day upon which the final appealable order was entered. **See** Pa.R.A.P. 905. Appellant and the PCRA court complied with the dictates of Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the [PCRA c]ourt erred in determining trial counsel provided effective assistance of counsel despite their failure to object to or request a limiting jury instruction regarding witness testimony regarding the Appellant's involvement in the distribution of controlled substances?

2. Whether the [PCRA c]ourt erred in determining trial counsel provided effective assistance of counsel despite [eliciting testimony] that the Appellant was arrested on separate pending criminal charges during cross-examination of Officer Samuel Long?

3. Whether the [PCRA c]ourt erred in determining trial counsel provided effective assistance of counsel despite their failure to object to irrelevant evidence that *alibi* witness Latoyia Graves was on probation for distribution of cocaine, which was not admissible to impeach her credibility?

4. Whether the [PCRA c]ourt erred in determining trial counsel provided effective assistance of counsel despite their failure to object to the flight and concealment as consciousness of guilt instruction despite a lack of evidence the Appellant was aware he was being pursued for homicide charges at the time of the alleged flight?

Appellant's Brief at 3-4.

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

- 6 -

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

All of Appellant's claims assert that trial counsel was ineffective. Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[ ] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations and quotation marks omitted). As this Court explained:

> A claim has arguable merit where the factual averments, if accurate, could establish [grounds] for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted).

Appellant claims that trial counsel was ineffective for eliciting, failing to object to, or failing to limit the introduction of references to: (1) Appellant being a drug dealer (2) Appellant's flight from law enforcement as police officers attempted to arrest Appellant for an unrelated charge; and (3) *alibi* witness Graves' distribution of crack cocaine conviction. Appellant's Brief at 9. He also claims that trial counsel was ineffective for failing to object to a jury instruction, which permitted the jury to consider his flight as consciousness of guilt. *Id.* We examine Appellant's first three claims together.

Our Supreme Court previously explained:

Counsel [is] not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking. Objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Spotz*, 870 A.2d 822, 832 (Pa. 2005). It is a PCRA petitioner's burden to demonstrate that no competent counsel would have chosen a particular course of action or inaction, or that an unchosen

alternative offered a significantly greater potential chance of success. ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-1044 (Pa. Super. 2019). Appellant is also required to make an actual showing of prejudice. ***Id.*** at 834-835.

We have carefully reviewed the certified record, the relevant law, the notes of testimony, the submissions of the parties, and the PCRA opinions issued by Judge Pezze and Judge Krieger, respectively. Based upon our review, we agree with the able discussion and analysis provided by the PCRA courts on Appellant's first three issues. They noted, *inter alia*, that (1) references to Appellant as a drug dealer would be permitted as motive evidence and trial counsel reasonably chose to overlook them because such references would "otherwise go unnoticed among the repeated references to drug dealing on the part of the victim and other Commonwealth witnesses;" (2) for similar reasons, Appellant could not demonstrate prejudice by *alibi* witness Graves's volunteered testimony of her own drug involvement; and (3) eliciting testimony that officers arrested Appellant on an unrelated charge was a reasonable strategy to rebut the Commonwealth's inference that Appellant fled from officers because he was guilty of the homicide. ***See*** PCRA Court Opinion, 2/25/21; PCRA Court Opinion, 1/8/15. Thus, we affirm the dismissal order on the grounds set forth in the PCRA courts' prior opinions. ***Id.***

In his fourth issue, Appellant challenges trial counsel's effectiveness in failing to object to a jury instruction regarding flight as evidence of guilt.

Appellant argues that "[t]here is simply no evidence to suggest [ ] Appellant was aware he would be charged with homicide when he attempted to flee from Officer [Samuel] Long." Appellant's Brief at 28-29. The Commonwealth rebuts Appellant's contention by citing to notes of testimony from the jury trial which established that Appellant contacted a friend to transport him from the crime scene, confessed to that friend that he shot someone, and asked that friend to dispose of the gun. Commonwealth's Brief at 23.

> A jury charge is proper if supported by the evidence of record. **Commonwealth v. Washington**, 692 A.2d 1024, 1028 ([Pa.] 1997). [Our Supreme] Court has held that "when a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis of a conviction in connection with other proof from which guilt may be inferred." **Commonwealth v. Rios**, 684 A.2d 1025, 1025 ([Pa.] 1996), *quoting* **Commonwealth v. Coyle**, 203 A.2d 782, 789 ([Pa.] 1964).

**Commonwealth v. Clark**, 961 A.2d 80, 92 (Pa. 2008) (cleaned up; parallel citations omitted).

Appellant's challenge argues that the record is devoid of evidence demonstrating his guilty knowledge. Guilty knowledge, however, may be inferred by circumstantial evidence. **Commonwealth v. Robinson**, 128 A.3d 261, 267 (Pa. Super. 2015). Here, multiple witnesses testified that they heard Appellant make threats toward Weems prior to and including the day of his death. Subsequently, Appellant confessed to Pinnock that he shot Weems when he asked Pinnock to pick him up. He later told Pinnock that he shot Weems with a .40 caliber gun, hid the murder weapon, and asked Pinnock to

dispose of it. Accordingly, sufficient circumstantial evidence supported the inference of guilty knowledge, as required for a jury instruction regarding flight as evidence of consciousness of guilt. Thus, the trial court would have properly overruled any objection to the jury instruction. PCRA Court Opinion, 1/8/15, at 3. Moreover, Appellant fails to establish in what way he was prejudiced by such jury instruction when "the Commonwealth's evidence in support of a conviction was overwhelming." PCRA Court Opinion, 2/25/21, at 14; *see also Rios*, 684 A.2d at 1025 (flight instruction may form basis of conviction "in connection with other proof from which guilt may be inferred"). Thus, Appellant's fourth issue warrants no relief.

We affirm the dismissal of Appellant's petition. Because we adopt a portion of the PCRA courts' opinions, the parties are directed to attach a copy of the January 8, 2015 and February 25, 2021 PCRA court opinions to all future filings pertaining to the disposition of this appeal.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2021

- 11 -