J-S02041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
                 v.             :
                                :
                                :
RAYNERDO JONES                  :
                                :
             Appellant          :    No. 414 EDA 2021

Appeal from the PCRA Order Entered January 14, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003864-2017

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MARCH 24, 2022**

Raynerdo Jones (Appellant) appeals from an order entered in the Philadelphia County Court of Common Pleas that dismissed, without a hearing, his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant seeks relief from the judgment of sentence of life imprisonment, imposed on April 25, 2018, after a jury convicted him of first-degree murder, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime (PIC).[1]  Appellant contends the PCRA court erred in finding he was not entitled to relief when trial counsel was ineffective:  (1) for failing to investigate and call two witnesses at trial; and (2) for failing to

---

[1] 18 Pa.C.S. §§ 2502(a), 6106, 6108, and 907, respectively.

request imperfect self-defense (voluntary manslaughter) and heat of passion (voluntary manslaughter) jury instructions. For the reasons below, we affirm.

The factual history was previously summarized by the trial court[2] as follows:

> On November 11, 2016, the decedent, Hezekiah "Jeremiah" McCloud, was shot multiple times at 3816 North 18th Street in north Philadelphia, next to the home of Bettie "Tanya" Cuffee. Responding officers encountered Gloria McCloud and Isrea Gilliard at the scene of the shooting, each of whom described the shooter as a light-skinned African-American male with facial tattoos. Officers escorted McCloud and Gilliard to the Police Administration Building ("PAB") for questioning.
>
> At the PAB, Detective Freddie Mole showed each witness a single suggestive photo of [Appellant], with the notation "arrestee database." Each witness separately stated that Cuffee argued with [Appellant] immediately before the shooting and identified him by the photograph.
>
> During the suppression hearing, [Detective] Mole confirmed the single-photo procedure. Gilliard testified that she recognized [Appellant] because she had seen him coming and going numerous times from Cuffee's house over the previous six months. McCloud testified that she did not personally know [Appellant] and had not seen him before the date of the incident.
>
> This Court suppressed the out-of-court identifications of both McCloud and Gilliard. Due to the suggestive photo procedure, McCloud was not permitted to make an in-court identification of [Appellant]. Because Gilliard had an independent basis of identification from her prior interactions with him, she was permitted to identify [Appellant] in-court.

---

[2] A panel of this Court adopted the facts and procedural history on direct appeal. *See Commonwealth v. Jones*, 1732 EDA 2018 (unpub. memo.) (Pa. Super. Feb. 12, 2019).

At trial, Cuffee testified that at 8:15 a.m. on November 11, 2016, she awoke to find her daughter Marktina Cuffee's paramour, [Appellant], in her row house on the 3800 block of North 18th Street. A verbal argument ensued, escalating when Cuffee punched and chased [Appellant] out of her house.

After the fight spilled onto the street, Gilliard came out of her neighboring home to tell the pair to move the argument elsewhere. Gilliard heard [Appellant] tell Cuffee "he['d] be back" before leaving the area. Gilliard recognized [Appellant], as she previously observed him on at least six occasions over the previous six months.

After the argument, Cuffee travelled to the Roman Grocery at 1735 West Butler Street, approximately half a block from her home, to purchase cigarettes. At 10:06 a.m., video surveillance from the store captured Cuffee leave the store and walk in the direction of her home.

Shortly after her arrival, [Appellant] returned to the 3800 block on North 18th Street on a bicycle. McCloud, from her home next-door to Cuffee's, overheard [Appellant] shouting and went outside to investigate. McCloud observed an argument for ten minutes before returning inside. [Appellant] left the block shortly thereafter.

After [Appellant] left the block, the decedent came onto his porch and shared a cigarette with Cuffee. As they smoked, [Appellant] returned to the area of the Roman Grocery with an unidentified person. At 10:26 a.m., video surveillance captured [Appellant] and the [unidentified person] walk past the Roman Grocery. [Appellant] continued to Cuffee's home while the unidentified [person] remained outside the store.

[Appellant] returned to Cuffee's home and began insulting her again. In response, the decedent told [Appellant] not to speak to a woman with such a disrespectful tone. After arguing with the decedent, [Appellant] returned to [the unidentified person] at the Roman Grocery store and retrieved a pistol from him. This exchange was captured by video surveillance. Armed, [Appellant] returned to Cuffee's porch, advanced towards the decedent and shot him five times. As the decedent lay bleeding on the porch, [Appellant] stood over his fallen body and shot again.

Thirty[-]two seconds after the shooting, [Appellant] fled south towards the unidentified [person] at the Roman Grocery. Recovered video surveillance captured both men as they fled south on North 18th Street, turning left on West Butler Street before fleeing right onto North Bouvier Street.

Philadelphia police received several calls as [Appellant] and the unidentified [person] fled the scene. In response to the dispatcher's radio call, Officer William Argyriou arrived on the scene at 10:28 a.m. Unwilling to wait for an ambulance, Officer Argyriou and his partner Officer Jeremey Elliot transported the decedent to the hospital, where he was pronounced dead at 10:46 a.m.

Dr. Khalil Wardak, an Associate Medical Examiner with the City of Philadelphia, conducted the decedent's autopsy and testified at trial. Three of the six shots damaged vital organs, including the heart and lungs. None of the wounds demonstrated soot or stippling, indicating that the shots were fired from further than three feet from the decedent's body. The cause of death was multiple gunshot wounds and the manner of death was homicide. Dr. Wardak submitted two projectiles from the decedent's body to ballistics for testing.

As the decedent was transferred to the hospital, Officers Myisha Allen and Joseph Doyle secured the scene. Cuffee approached the officers, explaining that [Appellant] had shot the decedent because he was standing up for her. Officers escorted Cuffee, McCloud, and Gilliard to the PAB, and they provided statements.

Officer [Gregory] Yatcilla of the Crime Scene Unit recovered five fired cartridge cases ("FCCs") and three projectiles from the McCloud porch and then submitted them for testing. Firearms expert Officer Jose Cruz examined all of the ballistics evidence collected from the porch and the decedent's body.[5] Officer Cruz concluded that all of the fired bullets and FCCs were all 9-millimeter caliber and fired from the same firearm.

_____

5 Although Dr. Wardak identified six gunshot wounds, only five projectiles and five FCCs were recovered. The graze wound on the decedent's chin was not associated with any of the recovered ballistic evidence.

_____

Detective Thorsten Lucke recovered the video evidence from Roman Grocery at 1735 West Butler Street on the corner of North 18th and Butler Streets as well as Annabel Food Market at 1707 West Butler on the corner of the West Butler and Pulaski Streets. A review of the video confirmed the timeframe described by Cuffee and McCloud.

On November 14, 2016 Detective Timothy Bass, a homicide detective in the Fugitive Unit, attempted to execute an arrest warrant issued for [Appellant] at several locations. It was not until April 12, 2017 that Detective Bass located [Appellant] at 1300 Erie Avenue and Old York Road, about twelve blocks from the crime scene. At the time, [Appellant] was wearing make-up on a portion of his face, hiding distinctive tattoos.

At trial, defense counsel presented Marktina Cuffee, who testified that her mother called family members to "come get his ass" after the altercation first began in the house. During her testimony, the defense played a 911 call made by Virginia Cuffee, Marktina's sister, which described the shooter with a distinctive tattoo reading "RIP" over his forehead, the same tattoo as [Appellant].[6] Tanya Cuffee asserted that she had no contact with any of her fourteen brothers. No witness claimed to have seen any other men at the time of the shooting, nor were any present when the police arrived moments later.

_____

[6] The Commonwealth presented two 911 calls as evidence before resting their case, the call by Virginia Cuffee and a call by an anonymous individual made seconds after the shooting. Both 911 calls described the shooter's distinctive facial tattoos, which matched those on [Appellant]'s face.

Trial Ct. Op., 8/8/18, at 2-6 (citations omitted).

On April 25, 2018, the jury convicted Appellant of first-degree murder and the related crimes. That same day, the trial court imposed the mandatory sentence of life imprisonment without parole for first-degree murder, and concurrent terms of three to six years' imprisonment for the firearms not to

be carried without a license offense and one to years' incarceration for the crime of carrying firearms on public streets or public property in Philadelphia.[3]

Appellant filed a post-sentence motion challenging the weight of the evidence, which the trial court denied on May 2, 2018. Appellant then filed a direct appeal, again raising his weight claim. A panel of this Court affirmed his judgment of sentence on February 12, 2019, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on July 24, 2019. *See Jones*, 1732 EDA 2018 (unpub. memo.) (Pa. Super. Feb. 12, 2019), *appeal denied*, 216 A.3d 1034 (Pa. 2019).

Thereafter, on June 17, 2020, Appellant filed a timely, counseled PCRA petition, in which he alleged claims of trial counsel's ineffectiveness for failing to call two witnesses. The Commonwealth filed a response on August 28, 2020. On September 3, 2020, the PCRA court continued the matter for additional defense filings, and Appellant filed an amended, supplemental petition on September 30, 2020. In his amended petition, Appellant raised two new claims of counsel's ineffectiveness which concerned the failure to request certain jury instructions. The Commonwealth filed a second response on December 1, 2020.

On December 4, 2020, the PCRA court submitted notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant

---

[3] The court did not impose a further penalty as to the PIC conviction.

did not respond to the Rule 907 notice. On January 14, 2021, the PCRA court dismissed Appellant's petition, finding the issues raised were without merit. This timely appeal followed.[4]

Appellant raises the following claims for our review:

A. Did the PCRA court err, when it dismissed Appellant['s PCRA] petition and amended [PCRA] petition, as trial counsel was ineffective for failing to investigate and call witnesses Eugene Cuffee and Rasul Cuffee at trial and the PCRA court should have given PCRA counsel the opportunity to amend the [PCRA] petition?

B. Did the PCRA court err, when it dismissed Appellant['s PCRA] petition and amended [PCRA] petition, as trial counsel was ineffective for failing to request imperfect self-defense voluntary manslaughter and heat of passion voluntary manslaughter jury instructions?

Appellant's Brief at 4.

Our review of Appellant's issues is guided by well-established principles. When reviewing the denial of a PCRA petition, our standard of review is limited to examining whether the PCRA court's determination is "supported by the record and free of legal error." *Commonwealth v. Sneed*, 45 A.3d 1096, 1105 (Pa. 2012) (citation omitted). We are to view the evidence in the light most favorable to the prevailing party in the PCRA proceedings.

_____

[4] The court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal nor did Appellant file one independently. Additionally, we note that during this time, counsel filed a motion to withdraw as counsel. This Court granted the motion by *per curiam* order on April 13, 2021. New counsel was appointed.

*Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012).  We note, however, that:

> [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings.  To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Sneed*, 45 A.3d at 1105-06 (citations and quotation marks omitted).

Both of Appellant's arguments concern ineffective assistance of trial counsel.  In the context of a collateral challenge based on ineffectiveness, counsel is presumed to have been effective.  *Sneed*, 45 A.3d at 1106 (citation omitted).  To overcome this presumption, a petitioner is required to show: (1) the claim is of arguable merit; (2) counsel lacked an objective, reasonable basis for their actions; and (3) prejudice resulted from counsel's deficient performance.  *Id.*  As to the prejudice prong, "we employ the [*Strickland v. Washington*, 466 U.S. 668 (1984)] actual prejudice test, which requires a showing of a reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance.  A reasonable probability is a probability [ ] sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Daniels*, 104 A.3d 267, 281 (Pa. 2014) (internal citations, quotation marks, and brackets omitted).

Failure to establish any of the three prongs of this test is fatal to the claim. **Koehler**, 36 A.3d at 132. Finally, "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [ ] test, the court may proceed to that element first." **Id.** (citation omitted).

In his first argument, Appellant claims the PCRA court erred in finding that trial counsel was not ineffective for failing to investigate and call two witnesses, Eugene Cuffee and Rasul Cuffee, at trial. **See** Appellant's Brief at 17, 23. Appellant does not proffer any type of documentation, nor does he elaborate on the information that these witnesses would testify to an evidentiary hearing. Instead, he asserts that by not providing him with notice of any defect in the witness certification in the Rule 907 notice, the PCRA court erred and should have given counsel the opportunity to amend the PCRA petition pursuant to **Commonwealth v. Pander**, 100 A.3d 626 (Pa. Super. 2014) (*en banc*). **See** Appellant's Brief at 23. He states this "was prejudicial to [him] as he was ultimately denied his right to present the necessary witness certifications so as to prove that trial counsel was ineffective." **Id.** at 24.

To succeed on a claim trial counsel was ineffective for failing to investigate and call a witness, there are two requirements:

> The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." 42 Pa.C.S.A. § 9545(d)(1); Pa.R.Crim.P 902(A)(15). The second requirement is substantive. Specifically,

- 9 -

when raising a claim for the failure to call a potential witness, to obtain relief, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have known of the existence of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial. ***Commonwealth v. Carson***, [ ], 741 A.2d 686, 707 ([Pa.] 1999).

***Commonwealth v. Reid***, 99 A.3d 427, 438 (Pa. 2014). ***See also Pander***, 100 A.3d at 639 ("a failure to investigate and interview a witness claim overlaps with declining to call a witness").

Here, in dismissing Appellant's challenges, the PCRA court found the following:

[Appellant] fails to meet his burden with respect to each witness. Not only does [Appellant] fail to attach affidavits from the witnesses in his June 17, 2020 petition, but he declined to attach affidavits, provide certifications, or develop his claims further when given the opportunity to amend his petition. Instead, [Appellant] advances a boiler plate claim that his constitutional right to assistance of counsel was violated by counsel's failure to call these witnesses. [Appellant] does not provide any specifics regarding the substance of the witnesses' testimony, that they were ready, willing, and able to testify for the defense, or that the absence of their testimony unduly prejudiced [Appellant] in such a manner that his right to a fair trial was violated. . . .

PCRA Ct. Op., 1/14/21, at 7.

A review of the record confirms Appellant did not satisfy either of the ***Reid*** requirements in his original PCRA petition – procedurally, he did not attach a certification regarding either witness, and substantively, he did not explain that the witnesses existed, that they were available, that counsel was informed or should have known of the existence of the witnesses, that the

- 10 -

witnesses were prepared to cooperate and would have testified on his behalf, and that the absence of such testimony prejudiced him and denied him a fair trial. Instead, he merely alleged that he was denied his "constitutionally guaranteed right of effective representation" based on counsel's failure to call these "material fact" witnesses. Appellant's Petition for Relief Under the Post-Conviction Relief Act (42 Pa.C.S.A. § 9541, et seq.), 6/17/20, at 4. Notably, in its response to Appellant's original PCRA petition, the Commonwealth pointed out that Appellant "failed to provide signed certifications demonstrating that either Eugene Cuffee or Rasul Cuffee was available and willing to testify on his behalf at trial, nor has he set forth the substance of either's proposed testimony." Commonwealth's Letter Brief, 8/28/20, at 4.

In his amended petition, Appellant did not attach any certifications to the document and did not address the lack of certifications issue as raised by the Commonwealth.[5] Likewise, his appellate brief is devoid of any persuasive argument concerning the **Reid** requirements. Rather, as mentioned above, Appellant relies on **Pander** for the proposition that the PCRA court's failure to give notice of the defect concerning the certifications in its Rule 907 notice

_____

[5] Appellant's amended petition concerned only trial counsel's ineffectiveness as to the failure to request imperfect self-defense voluntary manslaughter and heat of passion voluntary manslaughter jury instructions. **See** Appellant's Amended Petition for Relief Under the Post-Conviction Relief Act (42 Pa.C.S.A. § 9541, et seq.), 9/30/20, at 4.

was improper and therefore, relief should be afforded to him. We disagree based on the following rationale.

In **Pander**, the defendant killed the victim, his brother-in-law,[6] after a verbal altercation turned physical. Several neighbors witnessed the incident. A jury found him guilty of first-degree murder and PIC. At one point, the defendant filed a PCRA petition, alleging, *inter alia*, that trial counsel was ineffective for failing to interview and present several witnesses as to the contentious relationship the victim had with his wife's paramour, and that the wife would instigate fights between her husband and her paramour. The defendant provided witness certifications that he drafted himself for these witnesses, which PCRA counsel attached to the amended petition. The defendant reiterated what the substance of the witnesses' proposed testimony would be, that "trial counsel knew of these witnesses or through reasonable investigation could have learned of them," and that the "testimony from these witnesses would have 'called into question the Commonwealth's claim at trial that it was the appellant who stabbed the victim to death.'" **Pander**, 100 A.3d at 639 (citation omitted). Relying on **Commonwealth v. McLaurin**, 45 A.3d 1131 (Pa. Super. 2012),[7] the Commonwealth responded that the

_____

[6] The defendant's sister was married to the victim, but they were separated at the time of the attack.

[7] In **McLaurin**, a panel of this Court concluded the appellant failed to properly plead and prove his ineffectiveness for failing to call a witness claim where the

*(Footnote Continued Next Page)*

- 12 -

defendant's "failure to provide affidavits [was] fatal to his claim and that his witness certifications were insufficient because they were authored by himself." ***Pander***, 100 A.3d at 639. The PCRA court "dismissed this aspect of [the defendant]'s claim based on this Court's decision in ***McLaurin***, although it did not provide notice of this defect in its Rule 907 notice of intent to dismiss." ***Id.***

On appeal, an *en banc* panel of this Court determined that the PCRA court's reliance on ***McLaurin*** was misplaced because the "rules of procedure and statute governing PCRA matters provided that witness certifications [were] sufficient" and that the higher burden of producing affidavits was not a requirement. ***Pander***, 100 A.3d at 640. ***See also Commonwealth v. Brown***, 767 A.2d 576 (Pa. Super. 2001). Additionally, the ***Pander*** Court observed that a sworn affidavit was not necessary to secure an evidentiary hearing in order for a witness to testify at that hearing. ***Pander***, 100 A.3d at 640. The ***Pander*** Court then "expressly overrule[d] ***McLaurin*** insofar as it requires PCRA petitioners to file affidavits to be entitled to an evidentiary hearing." ***Id.*** at 642.

_____

appellant: (1) "simply" listed the proposed individuals that would have been available and willing to testify at trial, (2) did not offer any other proof of the existence of these witnesses or their proposed testimony; (3) did not include an affidavit from any of the proposed witnesses; and (4) did not claim that counsel even knew these witnesses existed. ***McLaurin***, 45 A.3d at 1137-38.

Additionally, while affirming on other grounds,[8] the **_Pander_** Court commented: "[W]e note that it is improper to affirm a PCRA court's decision on the sole basis of inadequate witness certifications where the PCRA court did not provide notice of the alleged defect" in its Rule 907 notice. **_Pander_**, 100 A.3d at 642, _citing_ **_Commonwealth v. Robinson_**, 947 A.2d 710, 711 (Pa. 2008) (_per curiam_ order) (concluding it was error to uphold summary dismissal on grounds that petitioner did not include witness certifications from trial counsel where PCRA court did not provide notice of this defect) _and_ Pa.R.Crim.P. 905(B) ("When a petition for post-conviction collateral relief is defective as originally filed, the judge shall order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed. If the order directing amendment is not complied with, the petition may be dismissed without a hearing.").

The purpose of Rule 905 is "to provide PCRA petitioners with a legitimate opportunity to present their claims to the PCRA court in a manner sufficient to avoid dismissal due to a correctable defect in claim pleading or presentation." **_Commonwealth v. McGill_**, 832 A.2d 1014, 1024 (Pa. 2003) (citation omitted). Rule 905 works in conjunction with Rule 907.

> The purpose behind a Rule 907 pre-dismissal notice is to allow a petitioner an opportunity to seek leave to amend his

---

[8] The **_Pander_** Court addressed the merit of the defendant's ineffectiveness claim and concluded he was not entitled to relief. **_Pander_**, 100 A.3d at 642-43.

petition and correct any material defects, the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims. The response is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to discern the potential for amendment. The response is not itself a petition and the law still requires leave of court to submit an amended petition.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189 (Pa. Super. 2012) (citations and quotations marks omitted).

Turning to the instant matter, it is evident that based on the lack of substance in his argument and solely focusing on *Pander*, Appellant would like that decision to be viewed as a bright-line rule, whereby the failure to give notice of a defect in a Rule 907 notice involving an allegation of counsel's ineffectiveness for failing to call a witness, though sparse with any information, results in an automatic remand as pursuant to Rule 905.

However, we do not find that the analysis in *Pander* extends to the circumstances of this case. *Pander* is distinguishable from the present matter because there, PCRA counsel attached the witness certifications to the amended petition. The PCRA court erroneously believed the defendant should have attached affidavits and found the attached certifications were insufficient. The *Pander* Court found fault with the PCRA court's decision to

dismiss the petition in its Rule 907 notice without notifying the defendant of this "defect" pursuant to Rule 905(B).[9]

Here, however, Appellant did not attach certifications to his original petition or amended petition.[10] The only information he provided was in his original petition, wherein he described the individuals as "material fact" witnesses. Appellant's Petition for Relief Under the Post-Conviction Relief Act (42 Pa.C.S.A. § 9541, et seq.) at 4. Appellant was even put on notice by the Commonwealth in its response to his original petition that he did not attach any type of documentation concerning these witnesses. However, he failed to attach the required certifications to his amended petition or provide any details concerning the substance of these purported "material" witnesses' testimony. As such, we do not discern from **Pander** that this type of situation

_____

[9] **See also Robinson**, 947 A.2d at 711 (stating that witness certifications were included in the *pro se* petition attached to the counseled petition; however, the PCRA court found dismissal was warranted because, *inter alia,* no certifications from the potential witnesses were included; and the court acted improperly by never giving the petitioner an opportunity to attempt to address the procedural defect, as contemplated by Rule 905). We acknowledge that *per curiam* orders are not binding precedent but find **Robinson** helpful in our review.

[10] In amending the Rules of Criminal Procedure in 1995, the legislature provided for situations where an appellant or his counsel may sign a certification "saying to his [or her] best knowledge that this was an accurate statement of what the witness would testify to." **Brown**, 767 A.2d at 583 (citation omitted). Therefore, Appellant or his counsel could have signed a certification concerning the two witnesses at issue and attached it to the PCRA petition.

- 16 -

wherein this Court considered an appellant should be afforded relief – one where the appellant has not even attempted to meet their burden pursuant to Section 9545(d)(1) and **Reid**. Therefore, we do not find **Pander** controlling in this case,[11] and Appellant has not presented any other case law to persuade us otherwise. Accordingly, we conclude the PCRA court did not err in dismissing Appellant's first claim for failure to attach any witness certifications to his petitions.

Next, Appellant claims the PCRA court erred in finding that trial counsel was not ineffective for failing to request jury instructions concerning imperfect self-defense (voluntary manslaughter) and heat of passion (voluntary manslaughter). As for the imperfect self-defense charge, he contends:

> The testimony and evidence presented at trial clearly supported a claim of imperfect self-defense voluntary manslaughter on behalf of Appellant . . . and trial counsel was ineffective for failing to request such a jury instruction. Bettie "Tanya" Cuffee testified that she retrieved a crossbow from her residence after assaulting [Appellant] on her porch and summoned others to her house to continue the assault. Furthermore, after confronting [Appellant] in the street with the crossbow, she placed this crossbow within arm's reach of Hezekiah "Jeremiah" McCloud, after he appeared on her porch. It is apparent that Mr. McCloud deliberately intervened in the argument between [Appellant] and Bettie "Tanya" Cuffee, exchanging words with [Appellant] while a deadly weapon was within his reach. The evidence presented at trial confirms that [Appellant] had a subjective reasonable belief that the use of

---

[11] Likewise, **Robinson** is also distinguishable from the present matter where the petitioner did file certifications; however, the PCRA court erroneously found he did not and based its dismissal on that omission. Here, again, it bears repeating that Appellant did not provide any certification or statement as to these two witnesses.

- 17 -

deadly force against Mr. McCloud was necessary to protect himself from death or serious bodily injury, thus entitling him to a jury instruction on imperfect self-defense voluntary manslaughter.

Appellant's Brief at 27. Appellant maintains that it is "reasonably probable, that at least one juror would have found reasonable doubt" with respect to the first-degree murder charge and accepted the imperfect self-defense argument as to the lesser offense of voluntary manslaughter. *Id.* at 27-28.

In terms of the heat of passion instruction, Appellant asserts:

> In the instant matter, the evidence presented at trial supported a jury instruction for heat of possession voluntary manslaughter. Specifically, after repeated physical assaults of [Appellant] by Bettie "Tanya" Cuffee, including Ms. Cuffee striking him with her fists and a wooden [two by four], as well as threatening him with a crossbow, [Appellant] returned to Ms. Cuffee's house in an angry mood. Hezekiah "Jeremiah" McCloud stood up on Ms. Cuffee's porch to engage [Appellant] in a physical altercation while the aforementioned crossbow was within his arm's reach. In response to Mr. McCloud's physical provocation and with no time to calmly reflect, [Appellant] walked several feet across the street, retrieved a firearm from an unknown individual and seconds later fired this gun at Mr. McCloud.

*Id.* at 29-30. Appellant again claims it was "reasonably probable, that at least one juror would have found reasonable doubt" with respect to the first-degree murder charge and accepted the heat of passion argument as to the lesser offense of voluntary manslaughter. *Id.* at 30.

Keeping our standard of review regarding ineffective assistance of counsel in mind, we are guided by the following. An intentional killing generally constitutes first-degree murder. *See* 18 Pa.C.S. § 2502(a). Voluntary manslaughter is "an intentional killing . . . committed as a result of

an unreasonable belief in the need for deadly force in self-defense."

***Commonwealth v. Washington***, 692 A.2d 1024, 1029 (Pa. 1997); ***see also***

18 Pa.C.S. § 2503(b).

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). If the defender did not reasonably believe deadly force was necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable. A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

***Commonwealth v. Truong***, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*)

(some citations and quotation marks omitted).

A perpetrator may also commit voluntary manslaughter if he kills another while, *inter alia*, "acting under a sudden and intense passion resulting from serious provocation by" the victim. 18 Pa.C.S. § 2503(a)(1). A jury instruction for voluntary manslaughter concerning "heat of passion" is appropriate where the evidence suggests "that, at the time of the killing, [a]ppellant acted under a sudden and intense passion resulting from serious provocation by the victim." ***Commonwealth v. Sanchez***, 82 A.3d 943, 979 (Pa. 2013) (citation omitted). "If any of these be wanting — if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the

killing will be murder." *Id.* at 980 (citation and internal quotation marks omitted).

Here, the PCRA court found the following:

> At trial, counsel elected to pursue a strategy that would potentially cast a reasonable doubt on [Appellant]'s identity as the shooter, on the basis that the Commonwealth's witnesses were unreliable for failing to be completely truthful in their statements to the police and at prior proceedings in this matter. Given the facts of the instant case, trial counsel's chosen strategy was sound.
>
> First, at no point in any proceeding did [Appellant] identify himself as a shooter, or argue that he believed himself justified in shooting the decedent because he was acting under an intense passion or because he had an actual, if unreasonable, belief that he was justified in acting in self-defense. [Appellant] does not claim that he discussed a possible manslaughter strategy with counsel, nor does he argue that he was willing to testify and admit to shooting the decedent at trial. Because [Appellant] fails to present evidence of his intention to concede his own culpability at trial, his instant claim fails, and trial counsel's elected strategy to challenge the [Appellant]'s identity as the shooter was sound.
>
> Moreover, none of the facts support a heat of passion defense supporting a voluntary manslaughter verdict. . . .
>
> In his amended petition, [Appellant] describes how eyewitness Bettie Cuffee attacked and physically struck him prior to the shooting, with this altercation culminating with Cuffee brandishing and threatening [Appellant] with a crossbow. However, these acts of provocation describe eyewitness Cuffee's actions, and are not acts by the decedent that would inflame a sudden and intense passion. With respect to the decedent, [Appellant] contends that his act of standing on Cuffee's porch and confronting [Appellant], who was arguing with Cuffee, constitutes serious provocation. [Appellant] is mistaken. Such an act, arguing with someone in defense of your neighbor, is not the kind of confrontation that would impassion a reasonable person beyond their ability to perform cool reflection. Moreover, the evidence in this case demonstrates that [Appellant] was in fact capable of cool reflection, to the point that after arguing with the

- 20 -

decedent, [Appellant] ran half a block to a nearby street corner, retrieved a firearm from his compatriot, returned to the area of Cuffee's home, and shot the decedent five times, before fleeing. A heat of passion voluntary manslaughter instruction is therefore unwarranted and would not be appropriate in this case.

[Appellant]'s argument that trial counsel was ineffective for failing to request an imperfect self-defense voluntary manslaughter instruction must similarly fail. Not only did [Appellant] fail to argue that he knowingly and intentionally killed another, but the sequence of events he cites to support his argument are insufficient to support even an unreasonable belief that his killing of the decedent would have been justified. While [Appellant] establishes that Cuffee threatened him with a crossbow during an altercation earlier in the morning, the decedent was not outside to witness that altercation, and [Appellant] left the area of Cuffee's house for a half-hour to forty-five minutes before returning. While [Appellant] claims that the crossbow was within the decedent's reach when he returned to Cuffee's home, his averment is directly contradicted by Cuffee's account, indicating that she carried the crossbow inside before [Appellant] returned to her home. Trial counsel thoroughly explored where the crossbow was out on the porch during his cross-examination of Cuffee, however, this is of little consequence as [Appellant]'s argument hinges on defense against actions taken by Cuffee, who was not killed, in a period of time well before the instant shooting, before the decedent was present or even a participant in the argument that lead to the instant murder.

The facts do not support [a] voluntary manslaughter verdict, but rather demonstrate that [Appellant] murdered the decedent with the specific intent to kill. Not only did [Appellant] leave the scene of the shooting for nearly an hour after his initial altercation with Cuffee, he returned to the area to reinitiate his argument with Cuffee, retrieved a weapon after that [argument], and returned to the street outside of Cuffee's home, where he shot the decedent five times. [Appellant] approached and stood over the decedent's wounded body before firing the final bullet. These actions demonstrate a malice and intent befitting [Appellant]'s [f]irst-[d]egree [m]urder verdict.

PCRA Ct. Op. at 8-10.

- 21 -

A review of the record supports the PCRA court's findings.  First, we note that the elements of voluntary manslaughter compel the perpetrator to acknowledge that he killed another individual but that there was a justifiable defense.  Here, however, it was the defense's strategy to challenge the identification of Appellant as the shooter by attacking the credibility of the Commonwealth's witnesses.  Accordingly, requesting jury instructions related to voluntary manslaughter would have been inconsistent with the defense's trial strategy and created confusion with the jury.  *See Commonwealth v. Ort*, 581 A.2d 230, 233-34 (Pa. Super. 1990) (concluding counsel not ineffective for failing to request voluntary manslaughter instruction in murder trial where defense was defendant did not set fire that killed the victim).

Moreover, we note that counsel is not required to request a jury instruction that is not supported by the evidence.  *See Daniels*, 104 A.3d at 288-89.  As pointed out by the PCRA court, Appellant's assertions concern Cuffee's actions and not those of the decedent.  The record reveals that after engaging in a verbal and physical argument with Cuffee, in which she punched him, Appellant exited the residence after she chased him out.  *See* N.T., 4/23/18, at 173-80.  Cuffee testified that after Appellant left, she retrieved a "bow and arrow" and placed it on her porch, but shortly thereafter, she "calmed down" and carried it back inside before Appellant returned.  *Id.* at 182.  When Appellant did reappear over an hour later, he began insulting Cuffee while the decedent, a neighbor, was outside observing the incident.

*Id.* at 182-83. After the decedent made a comment, Appellant ran across the street to his accomplice and retrieved the gun. *Id.* at 183-84. Appellant came back and immediately started shooting at the decedent numerous times, including the final time where he stood over the victim when he shot him. *Id.* at 184.

Contrary to Appellant's allegations, there is no evidence to support his contention that the decedent stood up to engage in a physical altercation with Appellant while the crossbow was within the decedent's reach, nor does Appellant point to anywhere in the record to confirm his assertion. Moreover, based on the record before us, we cannot conclude that Appellant possessed an actual, but unreasonable, belief that deadly force was necessary, which would have supported a "imperfect self-defense" instruction. It is clear that Appellant provoked the incident, and he could have retreated with safety. *See Truong*, 36 A.3d at 599. Likewise, we cannot infer that Appellant was acting under a sudden and intense passion resulting from serious provocation by the decedent, which would have warranted a "heat of passion" instruction. *See Sanchez*, 82 A.3d at 979. Therefore, Appellant has failed to satisfy the first and second prongs of his ineffectiveness claim. Accordingly, we conclude the PCRA court did not err in determining Appellant was not entitled to jury instructions on imperfect self-defense and heat of passion as to voluntary manslaughter. As such, Appellant is entitled to no relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/24/2022*